**Anthony SALVAGGIO, Plaintiff,**

v.

**The Honorable John P. COTTER, Chief Court Administrator, John P. Evans, Esq., Acting "Chief Circuit Court Prosecutor" and the Honorable Sidney A. Johnson, State Referee, Defendants.**

**Civ. A. No. B–232.**

United States District Court,
D. Connecticut.

March 17, 1971.

Howard Owens, Jr., Owens & Schine, Bridgeport, Conn., for plaintiff.

Daniel R. Schaefer, Asst. Atty. Gen. of Conn., Hartford, Conn., Joseph Harbaugh, West Hartford, Conn., for defendants.

RULING ON PLAINTIFF'S MOTION TO CONVENE A THREE-JUDGE DISTRICT COURT AND FOR EQUITABLE RELIEF; AND DEFENDANT'S MOTION TO DISMISS

CLARIE, District Judge.

The plaintiff has brought this suit against Supreme Court Justice John P. Cotter, who serves also as Chief State Court Administrator, John P. Evans, Chief State Circuit Court Prosecutor and the Honorable Sidney A. Johnson, a State Referee, under the provisions of 42 U.S.C. §§ 1981, 1983 and 1988. The relief which he requests would require the convening of a three-judge district court, pursuant to 28 U.S.C. §§ 2281, 2282, to rule upon the constitutionality of Conn.Gen.Stat. §§ 54–47 and 54–47a, as amended. The first section challenged authorizes the naming of a one-man grand jury to investigate the commission of crimes; the second outlines the procedures for compelling incriminating testimony, coincident with the granting of immunity from criminal prosecution. The plaintiff requests that this Court grant permanent injunctive relief restraining the enforcement of the statutes, together with a declaratory judgment finding that the aforesaid sec-

tions of state law are unconstitutional. He also asks this Court not only to interpret these state statutes, but also to rule upon the legal status of the office of the Chief State Court Prosecutor and the validity of the defendant Johnson's occupancy of the office of State Referee. The defendants have responded by a motion, pursuant to Rule 12(b), Fed.R.Civ. P., to dismiss the complaint for failure to state a cause of action and for lack of jurisdiction. The Court finds that the plaintiff's claims are without merit on their face and that this Court is without jurisdiction to grant the relief requested.

## FACTS

Acting upon an application of the State Circuit Court's Chief Prosecutor, pursuant to Conn.Gen.Stat. § 54–47(b), the defendant Cotter on October 14, 1970, ordered that the Hon. Sidney A. Johnson, a State referee, conduct an inquiry in private, pursuant to Conn.Gen. Stat. § 54–47(c), to determine whether or not there was probable cause to believe, that any crime or crimes had been committed within the jurisdiction of said Court.[1] Numerous witnesses, including the plaintiff, were then summoned to appear at a grand jury session, which had been convened to hear testimony and review relevant records.

Having been served with a subpoena duces tecum on November 11, 1970, the plaintiff filed a motion in the State Superior Court to vacate and quash said process. However, before the motion could be heard by a judicial officer, the plaintiff was interrogated before the grand jury, where he was denied the presence of his counsel in the inquiry room. During this hearing, he purportedly invoked the privilege of the fifth amendment in response to a great majority of the questions propounded to him. His presence before the grand jury was publicized in area newspapers;

and there were two newspaper articles which carried a reference to his prior criminal record.

The plaintiff again requested the State Superior Court to hear a motion to quash and the court decided that it had no jurisdiction to entertain the motion; there is no evidence that an appellate review was sought. The plaintiff represents that he has been unable to obtain a judicial determination of his claims on their merits. Subsequently he filed an application for a Writ of Prohibition, directed against the defendant State Referee and the defendant Chief Court Prosecutor. This motion was heard and summarily denied November 17, 1970; no appellate review followed.

On December 10, 1970, in answer to a subpoena, the plaintiff appeared with counsel at a session of the Bridgeport Circuit Court. The defendant prosecutor delivered to him a copy of the latter's application for confirmation of criminal immunity[2]. The judge reviewed the matter with the plaintiff in chambers, but his counsel was excluded. The judge then issued an order granting immunity from prosecution to the plaintiff under the statute[3] and directed that he appear before the grand jury the following week to resume his testimony. Since the plaintiff continues to challenge the validity of the grand jury as constituted, as well as the status of its affiliated officers, the plaintiff intends to exercise his fifth amendment constitutional privilege, when the hearings resume. He represents that because of his stand, he is now confronted with a clear and present danger of being imprisoned for an indefinite and unlimited period of time.

It is the plaintiff's contention that the defendant Cotter, a constitutional judicial officer, has been unlawfully delegated with executory investigatory powers by the legislature; and the legislature has unlawfully attempted to give him

1. Defendants' Exhibit "A".

2. Conn.Gen.Stat. § 54–47a.

3. Defendants' Exhibit "B".

the discretion to determine whether or not the grand jury session should be open to the public or held in private. The plaintiff also challenges the administrative office of defendant Evans, as Chief Circuit Court Prosecutor, on the grounds that such a public office has no lawful statutory existence; and further, that the defendant State Referee, as a member of the judicial branch of the government, has been unlawfully delegated with executive authority under Article II and Article IV, § 12 of the state constitution and in violation of the plaintiff's rights of due process as guaranteed under the fifth and fourteenth amendments to the United States Constitution. The plaintiff finally claims that the statute which authorizes immunity from criminal prosecution, where a witness voluntarily gives self-incriminating testimony before the grand jury is too restrictive, is constitutionally inadequate, and therefore a nullity.

The plaintiff also represents that the unfavorable publicity toward him, which has emanated from his presence at the grand jury session, has affected his credit rating in the area and caused irreparable harm to his reputation; furthermore, as a direct result thereof, he claims that he may in the future be charged with criminal contempt, be convicted and incarcerated.

## DISCUSSION

■ Whenever an application for a three-judge district court is submitted to the court, the threshold question to be resolved is whether the plaintiff's claim of unconstitutionality is unsubstantial, "either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court (the Supreme Court) as to foreclose the subject." California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938).

"When a complaint for an injunction makes a claim of unconstitu-tionality which on its face would require a court of three judges under 28 U.S.C. § 2281 or 2282, the single district judge should consider whether the claim is substantial and, if he finds it is not, refuse to convoke a court of three judges and dismiss the action. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); California Water Service Co. v. City of Redding, 304 U.S. 252, 254–255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); * * * Powell v. Workmen's Compensation Board, 327 F.2d 131, 138 (2 Cir. 1964). This is not merely a power confided to the single district judge but an important responsibility * * *." Utica Mutual Insurance Company v. Vincent, 375 F.2d 129, 130–131 (2d Cir. 1967).

The plaintiff would claim that the challenged state statutes, §§ 54–47 and 54–47a, represent an unconstitutional delegation of executive authority to members of the judiciary by the state legislature in violation of the fifth and fourteenth amendments to the Constitution of the United States. In support of this position, the plaintiff relies in part, at least, on the case of In re Richardson, 247 N.Y. 401, 160 N.E. 655 (1928). That state court case is inapposite, because there the legislature authorized the governor to delegate to a judicial officer the performance of a duty, clearly encompassed within his executive authority, namely, the removal from office of the President of the Borough of Queens, in New York City. Such delegation of a non-judicial duty by the executive authority is clearly incompatible with the duties of a judicial officer. That is not the situation here. The state has always been considered to have the broad inherent power, through grand jury process, to investigate possible criminal conduct, as a basis for formally charging the commission of a crime.

The federal constitution too has historically treated the function of a grand jury to be judicial in character. Gener-

ally, it has been intrusted with the authority to investigate either by direction of the court, the district attorney, or its own body, any suspected commission of crime; and determine whether or not such crime has been committed, and if so, who committed it. This custom and practice has been sanctioned by long usage and general recognition.

"The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important federal crimes. It does so under general instructions from the court to which it is attached and to which, from time to time, it reports its finding. The proceeding before a grand jury constitutes 'a judicial inquiry', Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) of the most ancient lineage." Cobbledick v. United States, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940); see also, Hemans v. United States, 163 F.2d 228, 236–237 (6th Cir. 1947).

Connecticut too has consistently recognized for many years this principle. Justices of the peace were not only considered judicial officers, but were even considered to be properly invested with criminal investigating authority.

"A justice of the peace while holding his court 'acts as a judicial officer'; * * *. No question has heretofore been raised, so far as we are aware, as to the right of the General Assembly to cast upon justices the power to investigate crimes; nor do we think it open to question." McCarthy v. Clancy, 110 Conn. 482, 497–498, 499, 148 A. 551, 558 (1930).

 The states have never been required to utilize the grand jury procedure as a condition precedent to a court presentment on a charge involving the commission of serious crime; although such has always been a prerequisite in the federal jurisdiction as provided under the fifth amendment to the federal constitution. Thus, "due process of law" under the fourteenth amendment has never required a grand jury indictment, even in a state's prosecution for a capital crime. Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). A state is thus free to abolish the grand jury or reduce it in size, even to a single number and impart the investigating duties to a member of the judiciary, as it has done in this case. In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L. Ed. 682 (1947); In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

The legislature is free to exercise its authority in this area with a broad brush; even though there may be some overlapping of the three separate magistracies of constitutional government.

"Whether the legislative, executive, and judicial powers of a state shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the state. And its determination one way or the other cannot be an element in the inquiry, whether the due process of law prescribed by the 14th Amendment has been respected by the state or its representatives when dealing with matters involving life or liberty." Dreyer v. Illinois, 187 U.S. 71, 84, 23 S.Ct. 28, 32, 47 L.Ed. 79 (1902); Cf. Tenney v. Brandhove, 341 U.S. 367, 378, 71 S.Ct. 783, 95 L.Ed. 1019 (1950).

"Moreover, this Court has held that the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments." Sweezy v. New Hampshire, 354 U.S. 234, 255, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957).

The plaintiff relies heavily upon Jenkins v. McKeithen, 395 U.S. 411, 89 S. Ct. 1843, 23 L.Ed.2d 404 (1969) to support his stand, that the Connecticut laws

do not afford constitutional due process under the fifth and fourteenth amendments. However, that case is inapposite to the present matter. It concerned a state Labor-Management Commission of Inquiry, which had been named by the Governor of Louisiana to determine whether probable cause existed to find state and federal criminal law violations in the field of labor relations. The Supreme Court found that the function of the Commission was to adjudicate and make public findings of guilt and to publicly condemn a person being interrogated, without affording him adequate safeguards, in keeping with due process of law.

"(I)t is alleged that the very purpose of the Commission is to find persons guilty of violating criminal laws without trial or procedural safeguards, and to publicize those findings. * * * (H)e alleges a concerted attempt publicly to brand him a criminal without a trial." * * * *Jenkins, supra,* at 424, 425, 89 S.Ct. at 1850.

"(T)he Act, when analyzed in light of the allegations of the complaint, makes it clear that the Commission exercises a function very much akin to making an official adjudication of criminal culpability." * * * (at 427, 89 S.Ct. at 1852).

"(T)he alleged function of the Commission is to make specific findings of guilt * * *." (at 431, 89 S.Ct. at 1853).

■ As distinguished from the foregoing, the proceeding now being attacked is not an administrative investigation, such as that referred to in Hannah v. Larche, 363 U.S. 420, 449, 80 S. Ct. 1502, 4 L.Ed.2d 1307 (1960). This grand jury inquiry hearing is being conducted in private, with each witness having the opportunity to consult with his counsel outside the hearing room as issues arise. *See,* In re Groban, 352 U. S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957). The plaintiff argues that the statute allows the sessions to be open to the public in the discretion of the defendant Cotter. However, the fact remains that they are not being so conducted; they are held in private. If disclosure were ever attempted in the future, adequate state court remedies are available to provide timely safeguards. Kennedy v. Justice of District Court, 252 N.E.2d 201, 207 (Mass.1969).

It is also significant to note that the designated state referee presiding over the grand jury sessions would not be the same judicial officer, who would be conducting an independent proceeding in open court on any possible contempt citation, flowing from the plaintiff's presence before the grand jury. Diligent inquiry to ferret out crime should never be frustrated or denied, so long as due process safeguards are available to the parties affected.

■ The plaintiff asserts that the purported immunity granted under the statute is constitutionally invalid, because the protection afforded is not coextensive with the privilege. This statute, Conn.Gen.Stat. § 54–47a provides:

"No such witness shall be prosecuted or subjected to any penalty or forfeiture *for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence,* and no testimony or evidence so compelled, and no evidence discovered as a result of or otherwise derived from testimony or evidence so compelled, shall be used as evidence against him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt committed while giving such testimony or producing such evidence." (italicizing added).

This state immunity statute is broad, clear and concise. It specifically excludes any criminal prosecution for any transaction, matter or thing, concerning which the witness has been compelled to testify or produce evidence. Although

the focus or thrust of the statute is specially designed to ferret out for prosecution, all narcotics, gambling or other felonious crimes of violence, the immunity granted is not so limited; rather it includes any and all criminal matters concerning which he is compelled to testify. Its breadth of protection encompasses all future prosecutions and prohibits the use of any evidence discovered as a result of or derived from the testimony given before the grand jury. This statute affords the witness the very protection, which the plaintiff complains is absent under the Federal Organized Crime Control Act of 1970. The protection from prosecution granted under this state law is coextensive with the privilege of immunity and completely fulfills all federal constitutional requirements. *See*, Murphy v. Waterfront Commission, 378 U.S. 52, 77–78, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L. Ed.2d 1082 (1968).

The plaintiff claims that these statutes and the administration of them have caused him to suffer irreparable injury to his reputation and credit standing in that area of the state where he lives and does business. Specifically, he represented that in December 1970, his application for the extension of credit in the form of a real estate mortgage had been denied because of the unfavorable publicity emanating from his grand jury appearance. While this was offered as evidence of material proof of irreparable harm, when pressed for the specific reasons given by the bank official for the denial of credit, his testimony became conflicting and evasive. He stated that the banker did not specifically give that as the reason, but had alluded to the fact that he had seen his name in the paper recently. The plaintiff testified that he himself had concluded that this must have been the reason.[4] The Court finds that the petitioner has demonstrated no special circumstances nor has he experienced any greater injury to his feelings or reputation, than that which any citizen might normally be expected to experience, if he were summoned to appear before a grand jury.

■■ It is an elementary precept in a democratic society that every individual has the affirmative duty to cooperate with duly constituted law enforcement officials to the end that criminals shall be brought before the bar of justice. If inconvenience follows, that is an expected price for enjoying a free and orderly society. Those who accumulate an arrest record cannot be heard to complain because it may later become a source of personal embarrassment. No evidence has been demonstrated here, which would suggest that the publicity which flowed from the plaintiff's grand jury appearance emanated from anyone connected with the inquiry. No facts were disclosed, which would suggest any inference of harassment to this plaintiff by any of these defendants; nor has it been claimed that any state public official has exercised any bad faith toward the plaintiff during this grand jury probe.

■ The remaining issues raised by the plaintiff relating to the appointment of the Chief Circuit Court Prosecutor pursuant to state law; and the authority of the designated State Referee to perform his duties under the state constitution, are matters which are clearly within the jurisdiction of the Connecticut courts to decide.

"(N)o principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." Harrison v. N. A. A. C. P., 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959).

---

4. "He said—he didn't come out and say that they were denying the application of the mortgage because of the grand jury, but in a roundabout way he happened to mention that my name was in the paper." (Tr. 9).

The Court finds that no substantial claim of unconstitutionality exists as to these state statutes on their face; there is no evidence of bad faith harassment or official lawlessness by state officials in the administration and enforcement of said laws; and adequate state remedies exist to protect the plaintiff's rights and afford him due process of law.

The petitioner has not been threatened with any injury other than that normally expected in a criminal proceeding brought lawfully and in good faith. The plaintiff is not a defendant charged with a crime and it is quite unlikely that he ever will be so charged, at least on any matter being presently inquired about. The purpose of the immunity statute against self-incrimination assures this.

"The precise reasons for this long-standing public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. * * *

"(T)he cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." Younger v. Harris, 401 U.S. 37, 43, 46, 91 S.Ct. 746, 750, 751, 27 L.Ed.2d 669 (1971). *See also*, Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

This Court finds that the petitioner's claims are without merit on their face and this Court is without jurisdiction to grant the relief requested; and the defendants' motion to dismiss is granted. So ordered.