## GARDNER *v.* BRODERICK, POLICE COMMISSIONER OF THE CITY OF NEW YORK, ET AL.

No. 635. Argued April 30, 1968.—Decided June 10, 1968.

*Ronald Podolsky* argued the cause and filed briefs for appellant.

*J. Lee Rankin* argued the cause for appellees. With him on the brief were *Norman Redlich, Stanley Buchsbaum,* and *Robert T. Hartmann.*

*Michael J. Silverberg* filed a brief for the Patrolmen's Benevolent Association of the City of New York, Inc., as *amicus curiae,* urging reversal.

MR. JUSTICE FORTAS delivered the opinion of the Court.

Appellant brought this action in the Supreme Court of the State of New York seeking reinstatement as a New York City patrolman and back pay. He claimed he was unlawfully dismissed because he refused to waive his privilege against self-incrimination. In August 1965, pursuant to subpoena, appellant appeared before a New York County grand jury which was investigating alleged bribery and corruption of police officers in connection with unlawful gambling operations. He was advised that the grand jury proposed to examine him concerning the performance of his official duties. He was advised of his privilege against self-incrimination,[1] but he was asked to sign a "waiver of immunity" after being told that he would be fired if he did not sign.[2] Following

---

[1] The Assistant District Attorney said to appellant:

"You understand . . . that under the Constitution of the United States, as well as the Constitution of New York, no one can be compelled to testify against himself, and that he has a right, the absolute right to refuse to answer any questions that would tend to incriminate him?"

[2] Appellant was told:

"You understand . . . that under the Constitution of New York, as well as the Charter of the City of New York, . . . a public officer, which includes a police officer, when called before a Grand Jury to answer questions concerning the conduct of his public office and the performance of his duties is required to sign a waiver of immunity if he wishes to retain that public office?"

The document appellant was asked to sign was phrased as follows:

"I . . . do hereby waive all benefits, privileges, rights and immunity which I would otherwise obtain from indictment, prosecution, and punishment for or on account of, regarding or relating to any matter, transaction or things, concerning the conduct of my office or the

his refusal, he was given an administrative hearing and was discharged solely for this refusal, pursuant to § 1123 of the New York City Charter.[3]

---

performance of my official duties, or the property, government or affairs of the State of New York or of any county included within its territorial limits, or the nomination, election, appointment or official conduct of any officer of the city or of any such county, concerning any of which matters, transactions or things I may testify or produce evidence documentary or otherwise, before the [blank] Grand Jury in the County of New York, in the investigation being conducted by said Grand Jury."

[3] That section provides:

"If any councilman or other officer or employee of the city shall, after lawful notice or process, wilfully refuse or fail to appear before any court or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or to answer any question regarding the property, government or affairs of the city or of any county included within its territorial limits, or regarding the nomination, election, appointment or official conduct of any officer or employee of the city or of any such county, on the ground that his answer would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any such matter in relation to which he may be asked to testify upon any such hearing or inquiry, his term or tenure of office or employment shall terminate and such office or employment shall be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency."

Section 6 of Article I of the New York Constitution provides:

"No person shall be . . . compelled in any criminal case to be a witness against himself, providing, that any public officer who, upon being called before a grand jury to testify concerning the conduct of his present office . . . or the performance of his official duties . . . refuses to sign a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before such grand jury, shall by virtue of such refusal, be disqualified from holding any other public office or public employment for a period of five years . . . and shall be removed from his present office by the appropriate authority or shall forfeit his present office at the suit of the attorney-general."

The New York Supreme Court dismissed his petition for reinstatement, 27 App. Div. 2d 800, 279 N. Y. S. 2d 150 (1967), and the New York Court of Appeals affirmed. 20 N. Y. 2d 227, 229 N. E. 2d 184 (1967). We noted probable jurisdiction. 390 U. S. 918 (1968).

Our decisions establish beyond dispute the breadth of the privilege to refuse to respond to questions when the result may be self-incriminatory, and the need fully to implement its guaranty. See Spevack v. Klein, 385 U. S. 511 (1967); Counselman v. Hitchcock, 142 U. S. 547, 585–586 (1892); Albertson v. SACB, 382 U. S. 70, 80 (1965). The privilege is applicable to state as well as federal proceedings. Malloy v. Hogan, 378 U. S. 1 (1964); Murphy v. Waterfront Commission, 378 U. S. 52 (1964). The privilege may be waived in appropriate circumstances if the waiver is knowingly and voluntarily made. Answers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying. Counselman v. Hitchcock, supra, at 585–586; Murphy v. Waterfront Commission, supra, at 79.

The question presented in the present case is whether a policeman who refuses to waive the protections which the privilege gives him may be dismissed from office because of that refusal.

About a year and a half after New York City discharged petitioner for his refusal to waive this immunity, we decided Garrity v. New Jersey, 385 U. S. 493 (1967). In that case, we held that when a policeman had been compelled to testify by the threat that otherwise he would be removed from office, the testimony that he gave could not be used against him in a subsequent prosecution. Garrity had not signed a waiver of immunity and no immunity statute was applicable in the circumstances.

Our holding was summarized in the following statement (at 500):

> "We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic."

The New York Court of Appeals considered that *Garrity* did not control the present case. It is true that *Garrity* related to the attempted use of compelled testimony. It did not involve the precise question which is presented here: namely, whether a State may discharge an officer for refusing to waive a right which the Constitution guarantees to him. The New York Court of Appeals also distinguished our post-*Garrity* decision in *Spevack* v. *Klein, supra.* In *Spevack,* we ruled that a lawyer could not be disbarred solely because he refused to testify at a disciplinary proceeding on the ground that his testimony would tend to incriminate him. The Court of Appeals concluded that *Spevack* does not control the present case because different considerations apply in the case of a public official such as a policeman. A lawyer, it stated, although licensed by the state is not an employee. This distinction is now urged upon us. It is argued that although a lawyer could not constitutionally be confronted with Hobson's choice between self-incrimination and forfeiting his means of livelihood, the same principle should not protect a policeman. Unlike the lawyer, he is directly, immediately, and entirely responsible to the city or State which is his employer. He owes his entire loyalty to it. He has no other "client" or principal. He is a trustee of the public interest, bearing

the burden of great and total responsibility to his public employer. Unlike the lawyer who is directly responsible to his client, the policeman is either responsible to the State or to no one.[4]

We agree that these factors differentiate the situations. If appellant, a policeman, had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties,[5] without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, *Garrity* v. *New Jersey, supra,* the privilege against self-incrimination would not have been a bar to his dismissal.

The facts of this case, however, do not present this issue. Here, petitioner was summoned to testify before a grand jury in an investigation of alleged criminal conduct. He was discharged from office, not for failure to answer relevant questions about his official duties, but for refusal to waive a constitutional right. He was dismissed for failure to relinquish the protections of the privilege against self-incrimination. The Constitution of New York State and the City Charter both expressly provided that his failure to do so, as well as his failure to testify, would result in dismissal from his job. He was dismissed solely for his refusal to waive the immunity to which he is entitled if he is required to testify despite his constitutional privilege. *Garrity* v. *New Jersey, supra.*

We need not speculate whether, if appellant had executed the waiver of immunity in the circumstances, the effect of our subsequent decision in *Garrity* v. *New Jersey, supra,* would have been to nullify the effect of

---

[4] Cf. *Spevack* v. *Klein, supra,* at 519–520 (concurring in judgment).

[5] The statements in my separate opinion in *Spevack* v. *Klein, supra,* at 519–520, to which the New York Court of Appeals referred, are expressly limited to situations of this kind.

the waiver. New York City discharged him for refusal to execute a document purporting to waive his constitutional rights and to permit prosecution of himself on the basis of his compelled testimony. Petitioner could not have assumed—and certainly he was not required to assume—that he was being asked to do an idle act of no legal effect. In any event, the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment. It is clear that petitioner's testimony was demanded before the grand jury in part so that it might be used to prosecute him, and not solely for the purpose of securing an accounting of his performance of his public trust. If the latter had been the only purpose, there would have been no reason to seek to compel petitioner to waive his immunity.

Proper regard for the history and meaning of the privilege against self-incrimination,[6] applicable to the States under our decision in *Malloy* v. *Hogan*, 378 U. S. 1 (1964), and for the decisions of this Court,[7] dictate the conclusion that the provision of the New York City Charter pursuant to which petitioner was dismissed cannot stand. Accordingly, the judgment is

*Reversed.*

MR. JUSTICE BLACK concurs in the result.

[For opinion of MR. JUSTICE HARLAN, concurring in the result, see *post,* p. 285.]

---

[6] See *Miranda* v. *Arizona,* 384 U. S. 436, 458–466 (1966), and authorities cited therein.

[7] See, *e. g., Griffin* v. *California,* 380 U. S. 609 (1965); *Malloy* v. *Hogan, supra.*