Charles A. GULDEN and Richard R. Sage, Plaintiffs-Appellants,

v.

Monroe McCORKLE, and George Dickerson, Defendants-Appellees.

No. 81–1518.

United States Court of Appeals, Fifth Circuit.

July 21, 1982.

Opinion on Denial of Rehearing and Rehearing En Banc
Sept. 10, 1982.

Kenneth H. Molberg, Dallas, Tex., for plaintiffs-appellants.

Joseph G. Werner, Asst. City Atty., Dallas, Tex., for defendants-appellees.

Before CLARK, Chief Judge, POLITZ and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Plaintiffs-Appellants Charles Gulden and Richard Sage appeal from an adverse decision of the trial court in their suit against Defendants-Appellees Monroe McCorkle, Director of the Dallas Public Works Department (the "Department"), George Dickerson, Assistant Director, and the City of Dallas, Texas (hereinafter collectively the "Defendants"). Sage and Gulden were discharged [1] as employees of the Department after they refused to submit to polygraph exams requested by their Department superiors. They sued for reinstatement to their jobs and for damages. Gulden and Sage asserted that because the Defendants had failed to tender them immunity in regard to use of their polygraph answers in subsequent criminal proceedings, the Defendants had implicitly required them to waive such immunity in contravention of the fifth amendment right against self-incrimination. They alleged that they were then justified in refusing to take the polygraph exams and could not be discharged for so doing. We find that the Defendants did not require Gulden and Sage to waive, sur-render or forfeit any protected fifth amendment rights, that, at all times, the relevant fifth amendment protections were available to Gulden and Sage and that they were therefore not protected from discharges premised on their refusals to submit to the exams. We affirm the judgment of the district court.

## I. Facts and Proceedings Below

Gulden and Sage were employees of the Property Management Division of the Department. On the afternoon of August 14, 1978, the Dallas Employees Credit Union, another office located in the same building as the Department, received a bomb-threat. The bomb-threat forced the evacuation of the building and disrupted a retirement party for a Department employee. The bomb threat followed a series of pranks which had been played on various Property Management Division employees.

On August 16, 1978, two days after the bomb threat, McCorkle presented a memorandum to each Department employee directing him or her to submit to a polygraph examination and to sign a "waiver" [2] in connection with the exam. The stated purpose of the exam according to the memorandum which accompanied the waiver was to inquire about the employee's knowledge of the bomb threat.

On August 17, 1978, McCorkle learned that the private polygraph firm administering the exams required a second waiver. [3] Dickerson distributed these forms to the employees. Gulden and Sage refused to

1. Sage's discharge was ultimately reduced to a thirty day suspension by the City of Dallas Trial Board. Gulden's discharge was, according to the record, not modified.

2. The Department waiver stated:

   I, _____ of sound mind and body, age _____, do hereby submit to a polygraph examination given by _____, a certified polygraph examiner in the State of Texas. I understand that I have been ordered to take a polygraph examination by the Director of Public Works in conducting an administrative investigation for possible City of Dallas Code of Conduct violations. I hereby give my consent to _____ to conduct this polygraph examination concerning the subject matter previously discussed.

3. The polygraph firm's waiver stated:

   I, _____, hereby consent and voluntarily agree to allow Baker-Holden-McElroy & Associates to administer a polygraph (lie detection) examination to me. I voluntarily consent to this examination of my own free will, and state that no duress, threats, or coercion have been placed on me to take this examination. I have not been promised anything of value, reward, or immunity to induce me to consent to this examination. I understand that I have the right to stop my polygraph examination at any time I desire.

sign either of the waivers or to take the polygraph exams. Their written reasons for refusing to submit to the exams included their beliefs that the exams "smacked of selective discrimination" and that the Defendants had no right to require such exams. Gulden and Sage were subsequently placed on administrative leave.

On August 21, 1978, Gulden and Sage filed a complaint for temporary and permanent injunctive relief against threatened discharges, for monetary damages and for reinstatement (for jobs not yet lost). They claimed that:

> Defendants attempt to force plaintiffs to submit to polygraph examination[s] against their will while signing a waiver falsely stating that said submission was done voluntarily is a clear violation of plaintiffs rights against self incrimination under the 5th Amendment to the U.S. Constitution and the Texas Constitution and violates their right to due process under the 14th Amendment.

The Defendants responded:

> In the instant case, the City of Dallas has sought to compel the testimony of employees about acts of harassment and retaliation directed against their supervisors. *No waiver of the self-incrimination privilege has been demanded.* (Emphasis added.)

On August 24, 1978, McCorkle ordered Gulden and Sage to report to the Dallas Police Department for polygraph exams. They were required to sign one of two waivers.[4] Gulden and Sage again refused to sign either of the two forms or to report to take the exams.

The district court, on August 28, 1978, denied the request for temporary relief stating:

Plaintiffs have not supplied the Court with enough information at this time concerning their charges of harrassment to justify imposing a temporary restraining order. I also find that the constitution does not prohibit the City of Dallas from requiring the Plaintiffs' participation in a polygraph examination. While the city asserts that it will ask narrow and specific questions of the Plaintiffs at the polygraph examination, I cannot at this time prejudge whether or not the questions are permissible under *Gardner* or whether Plaintiffs may validly assert their privilege against self-incrimination at the polygraph examination.

On August 29, 1978, Gulden and Sage were discharged by the Defendants.

Gulden and Sage continued the prosecution of their lawsuit, requesting reinstatement and damages. They asserted that they were "discharged for exercising their protected right to refuse to answer questions and to take polygraph tests under circumstances amounting to a denial of their civil rights as guaranteed by the Fifth and Fourteenth Amendments. . . ." They also asserted that the questions to be asked were not related to their "official duties" and that they could not be discharged for refusing to answer these impermissible questions.

A bench trial was held. The district court issued findings of fact and conclusions of law, entering judgment in favor of the Defendants. The court, in its findings of fact, stated that the questions to be asked on the exams were sufficiently "job related." Furthermore, according to the court:

> There was no evidence that the Defendants demanded that Plaintiffs ex-

---

4. The two alternative waivers used by the police department stated:

> I, ————, of sound mind and body, age ————, do hereby submit to a polygraph examination given by ————, a certified polygraph examiner in the State of Texas. I understand that I have been ordered to take a polygraph examination by the Director of Public Works in conducting an administrative investigation for possible City of Dallas Code of Conduct violations. I hereby give

> my consent to ———— to conduct this polygraph examination concerning the subject matter previously discussed.
> I, ————, have been ordered by the Director of Public Works, ————, as part of an internal administrative investigation to submit to a polygraph examination. I agree to cooperate in the administering of this examination by members of the Dallas Police Department Polygraph Unit.

pressly waive their rights to invoke the Fifth Amendment's right to be free from self-incrimination and thereby relinquish. the right to exclude from evidence in any subsequent criminal proceeding any statements which they might have made during the polygraph examination. There is no state statute, city ordinance or city personnel rule that purports to create any such waiver.

The acts of the Defendants did not condition Plaintiffs' continued employment upon the relinquishment of their right to exclude their own testimony from evidence in a criminal proceeding and did not in any way deprive the Plaintiffs of their Fifth Amendment privilege against self-incrimination.

Plaintiffs were discharged because of their refusal to answer questions specifically, directly and narrowly relating to the performance of their duties.

In its conclusions of law the court stated:

In the case at bar, the questions asked on the polygraph exam were purely job-related. Moreover, the waivers at issue can in no way be construed as requiring Plaintiffs to relinquish their constitutional right against self-incrimination. The waivers speak merely to the fact that the examinee has consented to take the exam. The Public Works Department waiver specifically recites that the examinee is being ordered to take the examination, and the waiver required by the firm conducting the polygraph specifically gives an examinee the right to discontinue the exam at any time.

The Fifth Amendment does not require that an employee be advised that evidence obtained as a result of his testimony will not be used against him. It requires only that an employee be advised if it *will* be used against him, and further that an employee may not be dismissed for refusing to waive his right against self-incrimination. Had the Plaintiffs in this action submitted to the polygraph, and had there been an attempt to use that testimony against them in a criminal proceeding, Plaintiffs' constitutional rights would have been adequately protected by [the] holding in Garrity, supra, that testimony compelled by the threat of dismissal may not be used against them in a subsequent criminal action.

Gulden and Sage appeal, claiming not that they were asked to sign waivers, on penalty of job loss, which called for a surrender of their fifth amendment rights, but that the Defendants failed to make an affirmative tender of immunity to them, thus assuring them that their compelled answers could not be used in subsequent criminal proceedings against them. Gulden and Sage assert that this affirmative tender is required by controlling Supreme Court decisions, that, in the absence of such tender, their right to be free from self-incrimination was in jeopardy, and that they were justified in refusing to take the exams and could not be discharged for so doing.[5] They also challenge the court's finding that the questions were specifically, directly and narrowly related to the performance of their official duties. We address each argument in turn.

## II. Fifth Amendment Concerns

We begin our review with a brief summary of the relevant Supreme Court decisions which provide guidance for our decision today. When public employees are "compelled to testify by the threat that otherwise (they) [will] be removed from office, the testimony that [they give can] not be used against [them] in a subsequent prosecution." *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Furthermore, in a series of four decisions, the Court has held that a public employee cannot be compelled to answer questions concerning his or her official duties and also

---

**5.** Gulden and Sage do not claim (nor could they under *Lefkowitz I* and *II, Gardner* and *Sanitation Men*) that they are protected by the fifth amendment from having to *answer* questions, under penalty of job loss, when immunity from subsequent use in criminal prosecution has not been denied. Their contention seems to be rather that immunity must be affirmatively tendered in order for there to have been no impermissible demand of a waiver of immunity.

be compelled by threat of loss of job to waive the immunity guaranteed in *Garrity. Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) ("*Lefkowitz II*"); *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) ("*Lefkowitz I*"); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation of the City of New York,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) ("*Sanitation Men*").[6] Public employees may, however, be required to answer *even potentially incriminating* questions "if they have not been required to surrender their constitutional immunity." *Lefkowitz II,* 431 U.S. at 806, 97 S.Ct. at 2136; *Gardner v. Broderick,* 392 U.S. at 278, 88 S.Ct. at 1916. Refusal to answer questions where there has been no requested surrender of protected rights is a ground for dismissal. *Id.*

As the Court summarized in *Sanitation Men:*

As we stated in *Gardner v. Broderick, supra,* if New York had demanded that petitioners answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment *without requiring relinquishment of the benefits of the constitutional privilege,* and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity as

a result of his compelled testimony would not be at stake.

392 U.S. at 284, 88 S.Ct. at 1920 (emphasis added). In summary, as these cases emphasize, it is the compelled answer *in combination with* the compelled waiver of immunity that creates the Hobson's choice for the employee. It is a discharge predicated on the employee's refusal to waive immunity which is forbidden by *Lefkowitz I* and *II, Sanitation Men* and *Gardner,* not a discharge based on refusal to answer where there is no demand by the employer of the relinquishment of the constitutional right.

Gulden and Sage, on appeal, do not maintain that the Defendants *explicitly* requested they waive immunity. (The waiver forms, notes 2–4 *supra,* clearly show no such requested waiver.) They seem to claim, rather, that *Gardner, Sanitation Men* and *Lefkowitz I* and *II* mandate that once they articulated their fifth amendment concerns,[7] the Defendants were required to make an affirmative tender of immunity[8] before a polygraph exam could be required.[9] The Defendants' subsequent failure to do so, according to the rationale urged here, must have acted as an implicit demand of a waiver of immunity which justified the refusals to take the polygraph exams and made unlawful the subsequent discharges. Gulden and Sage also rely on several circuit court opinions in which there seems to be a requirement upon the employer of an affirmative tender of immunity to an employ-

---

**6.** In *Lefkowitz I* and *II, Sanitation Men* and *Gardner,* the Court was confronted with several New York statutes that permitted dismissal of a public employee who refused to testify before various courts, committees, officers or boards on the ground that his or her answers might tend to incriminate him or her and who refused to waive immunity from prosecution resulting from answers he or she might give in that testimony.

**7.** The Defendants argue that Gulden and Sage were not concerned about their fifth amendment rights and that an affirmative tender of immunity would not have altered their refusals. The trial court agreed. We need not determine whether this finding was clearly erroneous as we hold that, even if Gulden and Sage were concerned with self-incrimination, there had been no compelled waiver of their rights in this

regard and full fifth amendment protections were available.

**8.** The Defendants do not challenge Gulden's and Sage's implicit assertion that the Defendants had the power to grant immunity, or that their assurances of immunity would have had any force or effect. Any question of this nature is simply not an issue before us.

**9.** The Defendants do not offer any distinction between the grand jury testimony sought in *Gardner, Sanitation Men* and *Lefkowitz I* and *II* and the demand that Gulden and Sage submit to a polygraph examination. They assume that the principles of compulsion and immunity as articulated in cases dealing with grand jury testimony apply equally to this case. Thus there is no issue before us relating to any possible distinction.

ee. *United States v. Devitt*, 499 F.2d 135, 141 (7th Cir. 1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975) ("Nor may disciplinary action be taken against the witness for his refusal to testify, unless he is first advised that, consistent with the holding in *Garrity*, evidence obtained as a result of his testimony will not be used against him in subsequent criminal proceedings."); *Confederation of Police v. Conlisk*, 489 F.2d 891 (7th Cir. 1973), *cert. denied sub nom, Rochford v. Confederation of Police*, 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974) ("[A] public employer may discharge an employee for refusal to answer where the employer both asks specific questions relating to the employee's official duties and advises the employee of the consequences of his choice, *i.e.*, that failure to answer will result in dismissal but that answers he gives and fruits thereof cannot be used against him in criminal proceedings."); *Uniformed Sanitation Men Association v. Commissioner of Sanitation of the City of New York*, 426 F.2d 619 (2nd Cir. 1970), *cert. denied*, 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972) ("[T]he employee is [to be] duly advised of his options and the consequences of his choice.").

■ Gulden's and Sage's theory that an affirmative tender of immunity was mandated by the holdings of *Lefkowitz I and II, Sanitation Men* and *Gardner* finds no support in those cases.[10] It was rather the explicit demand by the employer of the waiver of immunity on penalty of job loss that created the constitutional infirmity. An employee who is compelled to answer questions (but who is not compelled to waive immunity) is protected by *Garrity* from subsequent use of those answers in a criminal prosecution. It is the very fact that the testimony was compelled which prevents its use in subsequent proceedings, not any affirmative tender of immunity. *Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of the City of New York*, 426 F.2d at 627. Logically then, the Defendants' failure to tender immunity

has put Gulden and Sage in no more jeopardy than *Gardner, Sanitation Men* and *Lefkowitz I* and *II* allow. "Public employees may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their official duties if they have not been required to surrender their constitutional immunity." *Lefkowitz II*, 431 U.S. at 806, 97 S.Ct. at 2136; *cf. Hoover v. Knight*, 678 F.2d 578 (5th Cir. 1982) (employee who was involved in parallel administrative and criminal proceedings did not have right to postponement of administrative proceedings in which she had not been forced, on threat of job termination, to waive fifth amendment protection in parallel criminal proceedings). There was no requirement of surrender here. Failure to tender immunity was simply not the equivalent of an impermissible compelled waiver of immunity.

Moreover, the circuit court cases cited by Gulden and Sage do not stand for the proposition urged by them that an affirmative tender of immunity must be given prior to an employee's appearance at a polygraph exam. A review of the facts of the cases relied upon indicate that the reviewing courts were concerned about the failure to tender immunity *at the time of a grand jury appearance (Devitt)* or *at an interdepartmental interrogation (Conlisk)*. Had Gulden or Sage responded to the request to appear for the polygraph exam and been faced with questions which they, for reasons of self-incrimination, refused to answer, their refusals to answer, absent some assurance that their compelled answers could not be used against them, would be supported by the holdings of these circuit decisions. We, however, decline to answer the highly speculative question whether an affirmative grant of immunity might, *at some point*, be necessary under controlling Supreme Court authority. The facts before us do not indicate even the existence of a particularized, specific inquiry in which questions of immunity could be properly

---

**10.** While Justice Stevens, in dissent in *Lefkowitz II*, referred to a "tender of immunity," such a requirement has never been an explicit or implicit condition of the relevant holdings.

framed.[11] We further decline to promulgate the rule, urged upon us by Gulden and Sage, that would allow an employee, before he or she is required to respond to any questions, to circumvent an investigatory proceeding by claiming generalized fifth amendment concerns prior to the time those concerns have been developed in a particularized context.

In conclusion, the discharges imposed upon Gulden and Sage were not imposed because they refused to waive their fifth amendment rights to be free from self-incrimination. No explicit or implicit waiver of their right to immunity had been requested of them. Any answers given by them could not, under *Garrity*, be used against them. Moreover, because the inquiry had not advanced to a level of specificity in which the competing concerns of immunity could be properly addressed, no affirmative duty (if any such duty may ever be found) had devolved upon the employer to advise Gulden and Sage that immunity was available. Gulden and Sage were told only that they must take the polygraph exams to retain employment. This was a permissible requirement.

### III. Propriety of Questions Asked

The trial court found that the polygraph questions related only to the August 14, 1978 bomb threat,[12] and were permissible. That finding is supported by the record. The question to ask in determining whether such polygraph questions are permissible is whether those questions were specifically, directly and narrowly related to the performance of the employee's public duties. *Gardner v. Broderick*, 392 U.S. at 278, 88 S.Ct. at 1916. To the extent that the *Gardner* holding relating to questions to be asked an employee by a grand jury compels that only certain types of questions be asked on a polygraph exam, we do not believe that the trial court erred in determining that the polygraph questions here were related to the performance of Gulden's and Sage's official duties. As the district court found:

> The bomb threat seriously disrupted the operations of the property management division because it appeared to be intended as an attempt to harass the retiring director of the property management division and because the bomb threat was perceived as one in a series of harassing pranks directed toward employees, especially supervisors, of the property management division. Those pranks, according to the testimony of Defendant McCorkle and Dickerson, had adversely affected morale and had reduced productivity in the property management division.

Questions of an employee relating to whether that employee might have telephoned a bomb threat to his or her employer's location during working hours clearly relate to the performance of official duties.

AFFIRMED.

---

11. For example, in this case, possible criminal prosecution relating to a bomb threat could be initiated on the federal or state level and any grants of immunity would call into question the specific statutory requirements of federal and Texas immunity statutes. *See* 18 U.S.C. §§ 6002, 6003 (federal immunity statutes); Note, Texas Immunity Law: A Survey and a Proposal, 10 Univ. of Hou.L.Rev. 1120 (1973). We, of course, recognize that there need not exist a specific statute setting forth a grant of immunity in order for one giving compelled testimony to be protected from its use in criminal prosecutions. *Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of The City of New York*, 426 F.2d 619, 626 (2nd Cir. 1970) ("[W]e see no reason why there must be a statute conferring [immunity]. There was none in *Garrity*, but the very act of the attorney general in telling the witness that

he would be subject to removal if he refused to answer was held to have conferred such immunity."). We note only that, in any case where the narrow question is whether there devolves upon an employer an affirmative obligation to provide immunity, it may seem most consistent with the statutory and non-statutory concerns of immunity to require that immunity must be tendered in the context of a particular proceeding after proper invocation of the fifth amendment. In that case, the questions relating to who can grant immunity and under what circumstances could properly be addressed.

12. Gulden and Sage contended that they did not know, in the beginning, the nature of the questions. They have abandoned this contention on appeal.