THOMAS E. DEBNAM v. NORTH CAROLINA DEPARTMENT OF CORRECTION

No. 397PA92

(Filed 30 July 1993)

**Constitutional Law § 354 (NCI4th); Public Officers and Employees § 65 (NCI4th) — State employee — administrative investigation — termination for refusal to answer questions — self-incrimination — warnings not required**

Where a State employee was informed during an internal investigation that refusal to answer questions about his employment could result in his dismissal and the State did not seek a waiver of the employee's immunity from the use of his answers in any criminal action against him, the State did not violate the employee's Fifth Amendment right against self-incrimination by terminating him for refusing to answer questions without advising him (1) that his answers could not be used against him in any subsequent criminal prosecution, or (2) that the questions would relate specifically and narrowly to the performance of official duties. Once the employee was informed by the investigating officials that he could be dismissed for failing to answer their questions, any and all responses the employee gave and any information discovered as a result of those responses automatically became excludable from any criminal proceeding which might be brought against him, and such assurances by the investigating officials would not have provided him any greater protection from self-incrimination than that to which he was automatically entitled.

**Am Jur 2d, Criminal Law §§ 703, 937; Public Officers and Employees § 253.**

**Refusal to submit to polygraph examination as ground for discharge or suspension of public employees or officers. 15 ALR4th 1207.**

On appeal by the respondent North Carolina Department of Correction and on discretionary review of a decision of the Court of Appeals, 107 N.C. App. 517, 421 S.E.2d 389 (1992), reversing an order entered on 7 February 1991, by Stephens, J., in the Superior Court, Wake County. Heard in the Supreme Court on 12 April 1993.

DEBNAM v. N.C. DEPT. OF CORRECTION

[334 N.C. 380 (1993)]

*R. Bradley Miller for the petitioner-appellee, Thomas E. Debnam.*

*Michael F. Easley, Attorney General, by Andrew A. Vanore, Jr., Chief Deputy Attorney General, and Valerie L. Bateman, Assistant Attorney General, for the respondent-appellant, North Carolina Department of Correction.*

*McGuiness & Parlagreco, by J. Michael McGuiness, on behalf of all amici curiae; William G. Simpson, on behalf of the North Carolina Civil Liberties Union Legal Foundation; Ferguson, Stein, Watt, Wallas, Adkins & Gresham, by Tom Stern, on behalf of the North Carolina Association of Educators, and by Adam Stein, on behalf of the North Carolina Academy of Trial Lawyers; Joseph Delorey, on behalf of the National Association of Government Employees and the International Brotherhood of Corrections Officers, amici curiae.*

MITCHELL, Justice.

The facts which are determinative of this appeal are not in dispute. Beginning in January 1982, the petitioner-appellee Thomas E. Debnam was employed by the respondent-appellant North Carolina Department of Correction (DOC) as Assistant Superintendent of the Gates County Correctional Facility. Debnam was a permanent employee subject to the State Personnel Act. On 10 September 1985, two officials from the DOC Regional Office interviewed Debnam for approximately one hour concerning an allegation made by an inmate that a ladies' class ring had been stolen from him and that Debnam had forced him to buy the ring back from another inmate for five dollars. Debnam asked the officials about the possibility of criminal charges being brought against him as a result of the incident. The officials replied that they had been directed to conduct an administrative investigation but that further action would be taken.

On 19 September 1985, three DOC officials interviewed the entire staff of the Gates County Correctional Facility, including the petitioner Debnam, regarding numerous allegations of mismanagement at the facility. During his interview with the officials, Debnam expressed concern that he might be criminally prosecuted for the incident involving the allegedly stolen ring. He stated that he would not answer any questions until he was given a written decision as to whether there would be a criminal prosecution brought

against him relating to the ring incident. One DOC official, Area Administrator James Varner, informed Debnam that he could be dismissed for failing to cooperate with an internal investigation. Debnam still refused to respond to any questions. Varner then suspended Debnam for his failure to cooperate with the internal investigation.

On 8 October 1985, Debnam again met with the three officials who had interviewed him on 19 September 1985. Varner read several allegations to Debnam and informed Debnam that he was recommending his dismissal. On 17 October 1985, Debnam received written notice of Varner's recommendation and the supporting reasons. On 2 December 1985, Debnam received written notice that his dismissal had been approved by DOC. Debnam was provided a hearing before the DOC Employment Grievance Committee on 13 February 1986. The Committee recommended that his dismissal be affirmed, and the Secretary of the Department of Correction agreed on 3 March 1986. Debnam was given written notice of this decision and of his appeal rights.

On 27 March 1986, Debnam appealed his dismissal to the North Carolina Office of State Personnel. In a recommended decision filed on 25 January 1989, an Administrative Law Judge concluded that DOC had dismissed Debnam for just cause, because DOC had proven that he committed several violations of departmental policy; therefore, Debnam was not entitled to reinstatement. However, the Administrative Law Judge also concluded that Debnam was entitled to back pay covering the period from 19 September 1985 through 11 December 1987, because, *inter alia,* DOC's suspension and dismissal of him violated his Fifth Amendment right to protect himself from self-incrimination in possible later criminal proceedings.

The State Personnel Commission declined to adopt the Administrative Law Judge's recommended findings and conclusions concerning certain procedural violations and Debnam's privilege against self-incrimination. Instead, the Commission issued a decision on 27 June 1989 (amended 12 July 1989) concluding that DOC committed neither a procedural violation nor a violation of Debnam's Fifth Amendment privilege against self-incrimination. The Commission further concluded that DOC had dismissed Debnam for just cause.

Debnam petitioned, pursuant to Chapter 150B of the General Statutes, for judicial review of the Commission's decision, challeng-

**DEBNAM v. N.C. DEPT. OF CORRECTION**

[334 N.C. 380 (1993)]

ing the Commission's conclusions on both the procedural issues and the Fifth Amendment issue. On 7 February 1991, Judge Donald W. Stephens entered an order in Superior Court, Wake County, dismissing Debnam's petition and affirming the decision of the Commission upholding the respondent DOC's dismissal of the petitioner Debnam. Regarding the Fifth Amendment issue, the trial court held that:

From the record it appears that both the Petitioner and the Administrative Law Judge erroneously concluded that Petitioner, as an Assistant Superintendent of the Gates County Prison Unit who was the subject of an internal mismanagement investigation by the Department which also included conduct that could have created a potential for criminal charges, was somehow shielded by the Constitution when he refused to answer job-related questions and was subsequently suspended and dismissed for such failure to cooperate and for other misconduct. Clearly, an internal Departmental investigation into mismanagement at the Gates Prison Unit was a matter in which the Petitioner had no right to refuse to cooperate; he was required to answer all appropriate questions, even those which may have incriminated him regarding criminal misconduct, so long as he was not required to waive any 5th Amendment protections at subsequent criminal proceedings. In essence, the law provides to all public employees automatic "use" immunity that excludes statements which they are required to make during internal administrative investigations from use by prosecutors as evidence against them at any subsequent criminal proceeding. The law does not require any form of warning to any such employee regarding his rights or obligations. A government employer may lawfully require a public employee to answer potentially incriminating questions about the performance of his duties under threat of dismissal. A refusal to answer or otherwise cooperate can constitute just cause for dismissal. Likewise, incriminating answers given by a cooperating employee can form the basis for dismissal. However, neither lack of cooperation nor incriminating statements can form the basis of any subsequent criminal prosecution. Any public employee who refuses to answer appropriate questions regarding his job performance does so at the risk of employment termination. Petitioner in this case accepted that risk by his refusal to cooperate with a proper internal

Departmental administrative investigation and was, therefore, subject to lawful termination.

The record in this case clearly shows that the Petitioner refused to answer questions from the beginning of the internal investigation on the basis of a defective 5th Amendment claim. This refusal standing alone was sufficient to support his suspension and subsequent discharge.

The petitioner Debnam appealed to the Court of Appeals, arguing that he could not be discharged—consistent with the Fifth Amendment—for refusing to answer potentially incriminating questions, because the officials who had questioned him had not advised him that his answers could not be used against him in any later criminal proceeding. The Court of Appeals agreed and held that "a person's right to be free from self-incrimination under the Fifth Amendment to the United States Constitution is so basic, so fundamental, that the government is required to fully inform the person of that right in both grand jury and disciplinary proceedings." 107 N.C. App. at 525, 421 S.E.2d at 394. The Court of Appeals concluded that "a state employee subject to administrative investigation must be advised (1) that the questions will relate specifically and narrowly to the performance of official duties; (2) that the answers cannot be used against the employee in any subsequent criminal prosecution; and (3) that the penalty for refusal is dismissal." Id. at 526, 421 S.E.2d at 395. The Court of Appeals further held that, in the absence of such advice, no penalties could be imposed on the petitioner for failing to answer questions. Id. The respondent DOC then appealed to this Court pursuant to N.C.G.S. § 7A-30(1). DOC also petitioned for a writ of supersedeas and for discretionary review, and this Court allowed those petitions on 23 November 1992.

The respondent-appellant DOC argues that the Court of Appeals erred in concluding that the Fifth Amendment to the Constitution of the United States required that DOC inform Debnam that his answers to the questions asked him during the internal investigation could not be used against him in any subsequent criminal prosecution. We conclude that DOC's argument is correct and that the Fifth Amendment to the Constitution of the United States, applicable to the States through the Fourteenth Amendment, did not require that DOC make such a declaration to its employee Debnam before dismissing him for refusing to cooperate with its internal investigation.

## DEBNAM v. N.C. DEPT. OF CORRECTION

[334 N.C. 380 (1993)]

The Supreme Court of the United States does not appear to have decided a case directly presenting the precise question presented by this appeal. However, based on clear language in that Court's decisions, we conclude that the State does not violate a public employee's Fifth Amendment right against self-incrimination by terminating the employee for refusing to answer questions relating to his employment, when the employee is informed that failure to answer may result in his dismissal and the State does not seek a waiver of the employee's immunity from the use of his answers in any criminal action against him.

The Fifth Amendment to the Constitution of the United States provides that "[n]o person . . . shall be compelled *in any criminal case* to be a witness against himself." (Emphasis added). In addition to protecting an individual "against being involuntarily called as a witness against himself in a criminal prosecution," the Fifth Amendment also privileges an individual "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might *incriminate* him in future *criminal* proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 75, 38 L. Ed. 2d 274, 281 (1973) (emphasis added). An individual therefore properly may refuse to answer questions asked in an internal investigation by a government employer "unless and until he is protected at least from the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant." *Id.* at 78, 38 L. Ed. 2d at 282 (citing *Kastigar v. United States*, 406 U.S. 441, 32 L. Ed. 2d 212 (1972) ).

In *Garrity v. New Jersey*, 385 U.S. 493, 17 L. Ed. 2d 562 (1967), police officers were questioned by the Attorney General of New Jersey regarding allegations of "fixing" traffic cases in municipal courts. Before being questioned, each officer was advised that anything he said might be used against him in a later criminal proceeding and that he had the right to refuse to answer if the answer would tend to incriminate him, but that, if he did refuse to answer, he would be subject to dismissal. *Id.* at 494, 17 L. Ed. 2d at 564. The officers answered the attorney general's questions, and some of their answers were used as evidence against them in subsequent criminal prosecutions. *Id.* at 495, 17 L. Ed. 2d at 564. The Supreme Court of the United States held that, where the officers were forced to choose between incriminating themselves by answering questions or losing their jobs by remaining silent, the responses made by the officers to the attorney general's ques-

tions were involuntary. *Id.* at 497, 17 L. Ed. 2d at 565-66. Thus, "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits [the use] *in subsequent criminal proceedings* of statements obtained under threat of removal from office." *Id.* at 500, 17 L. Ed. 2d at 567 (emphasis added).

In *Gardner v. Broderick*, a New York City patrolman was discharged after he had appeared before a grand jury which was investigating charges of police corruption, had been told that he would be fired if he did not sign a waiver of immunity, and had refused to sign the waiver. 392 U.S. 273, 20 L. Ed. 2d 1082 (1968). The Supreme Court of the United States held that the officer could not be dismissed on the basis of his refusal to waive the immunity provided by the privilege against self-incrimination, concluding that "the mandate of the great privilege against self-incrimination does not tolerate the attempt . . . to coerce a waiver of the immunity it confers on penalty of the loss of employment." *Id.* at 279, 20 L. Ed. 2d at 1087. However, the Court noted, by way of *obiter dictum*, that if the officer "had refused to answer questions . . . without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, . . . the privilege against self-incrimination would not have been a bar to his dismissal." *Id.* at 278, 20 L. Ed. 2d at 1087. The case at bar presents a fact situation precisely like that described in the *Gardner dictum. Id.* Although we recognize that statements in the nature of *obiter dictum* are not binding authority, we nevertheless find the reasoning of *Gardner* on the issue before us compelling and follow that reasoning in this case.

In *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation of the City of New York*, 392 U.S. 280, 20 L. Ed. 2d 1089 (1968), decided on the same day as *Gardner*, the Supreme Court also addressed the propriety of the dismissal of a public employee for refusal to waive the privilege against self-incrimination. In *Sanitation Men*, employee witnesses were summoned before the City Commissioner of Investigation and were told that their failure to testify on the grounds of the privilege against self-incrimination would result in their dismissal. Twelve employees also were told that their answers could be used against them in later criminal proceedings and were discharged for refusing to testify following this warning; three additional employees were discharged after they refused to sign waivers of immunity. *Id.* at 283-84, 20 L. Ed. 2d at 1092. The Supreme Court held that, under these circumstances,

## DEBNAM v. N.C. DEPT. OF CORRECTION

[334 N.C. 380 (1993)]

the "[p]etitioners were . . . dismissed for invoking and refusing to waive their constitutional right against self-incrimination. They were discharged for refusal to expose themselves to *criminal prosecution* based on testimony which they would give under compulsion, despite their constitutional privilege." *Id.* at 284, 20 L. Ed. 2d at 1092 (emphasis added). Noting that *Garrity* had not yet been decided when the twelve employees were told that their responses could be used against them in later criminal proceedings and were forced to decide whether they wished to answer questions, the Court stated that the employees were "entitled to remain silent because it was clear that New York was seeking, not merely an accounting of their use or abuse of their public trust, but testimony from their own lips which, despite the constitutional prohibition, could be used to prosecute them criminally." *Id.* at 284, 20 L. Ed. 2d 1092. In conclusion, the Court stated that

> if New York had demanded that petitioners answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege, and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity as a result of his compelled testimony would not be at stake.

*Id.* at 284, 20 L. Ed. 2d at 1093.

Following *Garrity, Gardner* and *Sanitation Men*, the Supreme Court has continued to hold that "the State may not insist that [employees] waive their Fifth Amendment privilege against self-incrimination and consent to the use of the fruits of the interrogation in any later proceedings brought against them," *Lefkowitz v. Turley*, 414 U.S. at 84-85, 38 L. Ed. 2d at 286, because such an insistence constitutes an attempt "to accomplish what *Garrity* specifically prohibit[s]—to compel testimony that ha[s] not been immunized." *Id.* at 82, 38 L. Ed. 2d at 284. While so holding, the Court also has emphasized that, so long as they "have not been required to surrender their constitutional immunity," public employees "may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their official duties." *Lefkowitz v. Cunningham*, 431 U.S. 801, 806, 53 L. Ed. 2d 1, 7 (1977). "Although due regard for the Fifth Amendment forbids the State to compel incriminating answers from its employees and con-

DEBNAM v. N.C. DEPT. OF CORRECTION

[334 N.C. 380 (1993)]

tractors that may be used against them in *criminal* proceedings, the Constitution permits that very testimony to be compelled if neither it nor its fruits are available *for such use." Lefkowitz v. Turley,* 414 U.S. at 84, 38 L. Ed. 2d at 285 (emphasis added).

The decisions of the Supreme Court of the United States in *Gardner, Sanitation Men, Turley* and *Cunningham* "emphasize that the employee's rights are imperilled *only* by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers." *Arrington v. County of Dallas,* 970 F.2d 1441, 1446 (5th Cir. 1992) (citing *Gulden v. McCorkle,* 680 F.2d 1070, 1074 (5th Cir. 1982), *cert. denied,* 459 U.S. 1206, 75 L. Ed. 2d 439 (1983) ). We agree with the United States Court of Appeals for the Fifth Circuit, which has held that a government employer is not required to affirmatively inform an employee of the law relating to use immunity before discharging that employee for refusal to answer questions which may incriminate him. *Gulden v. McCorkle,* 680 F.2d at 1076. *But see Weston v. U.S. Dept. of Housing and Urban Development,* 724 F.2d 943 (Fed. Cir. 1983) (Employee must be advised of his options to answer under *Garrity* immunity or to remain silent and face dismissal); *United States v. Devitt,* 499 F.2d 135 (7th Cir. 1974), *cert. denied,* 421 U.S. 975, 44 L. Ed. 2d 466 (1975) (Disciplinary action cannot be taken against an employee witness unless the employee is first advised that evidence obtained as a result of testimony will not be used against the employee in subsequent criminal proceedings); *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation of the City of New York,* 426 F.2d 619 (2d Cir. 1970), *cert. denied,* 406 U.S. 961, 32 L. Ed. 2d 349 (1972) (implies that "proper proceedings" are required before employee may be dismissed and that such proceedings include advice that any statements made under threat of dismissal cannot later be used in a criminal proceeding against the employee). In *Gulden,* the court reasoned that

> [a]n employee who is compelled to answer questions (but who is not compelled to waive immunity) is protected by *Garrity* from subsequent use of those answers in a criminal prosecution. It is the very fact that the testimony was compelled which prevents its use in subsequent proceedings, not any affirmative tender of immunity.

*Id.* at 1075. The court concluded that "[f]ailure to tender immunity simply [is] not the equivalent of an impermissible compelled waiver of immunity." *Id.*

In the present case, Debnam does not contend, nor does the record show, that DOC ever asked him to waive his constitutional immunity from the use in any future *criminal* prosecution of any information obtained from him by threat of dismissal. The officials investigating the allegations of misconduct at the Gates County Correctional Facility informed Debnam only that he could be dismissed if he failed to cooperate with the internal investigation. They did not attempt to determine whether anything he said could be used against him in any subsequent criminal prosecution or to advise him of his legal rights in that regard.

Under the circumstances presented by this case, Debnam's Fifth Amendment right to be free from compelled self-incrimination was not violated by his dismissal. Once he was informed by the investigating officials that he could be dismissed for failing to answer their questions, any responses Debnam gave and any information discovered as a result of such responses automatically became excludable from any criminal proceeding which might be brought against him. *See Garrity*, 385 U.S. at 500, 17 L. Ed. 2d at 567. "In essence, the privilege against self-incrimination affords a form of use immunity which, absent waiver, automatically attaches to compelled incriminating statements as a matter of law." *Hester v. City of Milledgeville*, 777 F.2d 1492, 1496 (11th Cir. 1985). Assurances by the DOC investigating officials that any answers given by Debnam could not be used against him in a criminal prosecution would not have provided him any greater protection from self-incrimination than that to which he was entitled automatically under the Fifth and Fourteenth Amendments upon answering the officers' questions after being threatened with dismissal for failure to answer. *See id.; Erwin v. Price*, 778 F.2d 668, 670 (11th Cir. 1985).

The respondent-appellant DOC further argues that the Court of Appeals erred by holding that the Fifth Amendment requires that a public employee subject to administrative investigation must be advised "that the questions will relate specifically and narrowly to the performance of official duties." 107 N.C. App. at 526, 421 S.E.2d at 395. Once Debnam was threatened with dismissal for failure to answer questions, *any and all* responses he made to

*any* of the officers' questions automatically became excludable from any criminal proceeding against him. *See Garrity*, 385 U.S. at 500, 17 L. Ed. 2d at 567. Therefore, because Debnam was fully protected from self-incrimination by this automatic constitutional immunity and DOC made no attempt to procure a waiver of this immunity, DOC did not violate *the Fifth Amendment* by dismissing Debnam for refusing to answer questions without first advising him that such questions would "relate specifically and narrowly to the performance of official duties."

We conclude that, because DOC made no attempt to elicit a waiver of Debnam's immunity from the use in any criminal prosecution of any statement he might make, no Fifth Amendment violation occurred. The Court of Appeals erred in holding that the Fifth Amendment prohibited the respondent-appellant DOC from discharging Debnam for refusing to answer questions during its internal investigation because he was not advised that his responses could not be used against him in any criminal prosecution and that the questions would relate specifically and narrowly to the performance of official duties.

Our conclusions and holding in this case are limited to the arguments before us, which are based solely and exclusively upon the Fifth Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment. We neither consider nor decide any other constitutional or legal questions. Having performed our limited function in this regard, it is not for this Court to determine whether warnings to public employees prior to their dismissal, such as those argued for by the petitioner-appellee Debnam, represent desirable public policy; such questions are left to the Executive and Legislative Branches under this State's constitutional system of government.

For the reasons stated in this opinion, the decision of the Court of Appeals is reversed.

REVERSED.