# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1431EA

_____

J. D. Hill, Former member of the    *
Pulaski County Sheriff's Office, Pulaski    *
County Regional Detention Facility,    *
   *
       Appellee,    *
   *
    v.    *
   *
Randy Johnson, Sheriff, Pulaski County;   *    Appeal from the United States
Danny Bradley, Member of the Pulaski   *    District Court for the Eastern
County Sheriff's Office; Carol Kimble,   *    District of Arkansas.
Member of the Pulaski County Sheriff's   *
Office, Professional Standards Unit;   *
Michael Barkhurst, Member of the   *
Pulaski County Sheriff's Office; Lou   *
Hughes, Member of the Pulaski County   *
Sheriff's Office,   *
   *
       Appellants.    *

_____

Submitted: September 22, 1998
Filed: November 16, 1998

_____

Before McMILLIAN, HEANEY, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

After the photograph of a beaten detainee disappeared from the desk of supervising officer J.D. Hill, the Pulaski County Sheriff's office undertook an investigation. During its course, Hill refused to answer questions about the incident and failed to show up for a polygraph examination. Nevertheless, a fellow officer said he had placed the photograph on Hill's desk in Hill's presence, and another said he had disposed of the photograph at Hill's direction. Following the thorough investigation revealing Hill's official misconduct, the Sheriff terminated Hill's employment. Hill then brought this civil rights action against the Sheriff and other office members alleging they violated his Fifth Amendment and due process rights. The Sheriff and officers moved for summary judgment on both the merits and the issue of qualified immunity. The district court denied the motion, and the Sheriff and officers brought this interlocutory appeal, see Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir. 1998) (denial of motion for summary judgment on basis of qualified immunity is immediately appealable). We reverse.

When reviewing the district court's summary judgment decision, we examine the record in the light most favorable to the opposing party and draw all reasonable inferences in that party's favor. See Burnham v. Ianni, 119 F.3d 668, 673 (8th Cir. 1997). "Qualified immunity shields government officials from suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Id.

Hill asserts the Sheriff violated his Fifth Amendment rights by discharging him for refusing to answer questions at his last meeting with the Sheriff and for remaining silent rather than obeying the Sheriff's order to take a polygraph examination. Hill asserts termination under these circumstances violated law that was clearly established in Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 392 U.S. 280, 284 (1968) (holding discharge of public employees for refusal to testify about official conduct on grounds of self-incrimination violated Fifth Amendment where employees were threatened with termination if they invoked right against self-incrimination and

were told their answers could be used against them in later criminal proceedings). Examining the record in Hill's favor, we conclude Hill has failed to allege the violation of clearly established Fifth Amendment rights of which a reasonable person would have known.

"The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). The Amendment is violated when public employees are compelled to testify by employers who require the employees to either incriminate themselves or to forfeit their jobs. See Garrity v. New Jersey, 385 U.S. 493, 497-98 (1967); Uniformed Sanitation Men, 392 U.S. at 284. As long as a public employer does not demand that the public employee relinquish the employee's constitutional immunity from prosecution, however, the employee can be required to either testify about performance of official duties or to forfeit employment. See Uniformed Sanitation Men, 392 U.S. at 284; Gulden v. McCorkle, 680 F.2d 1070, 1073-74 (5th Cir. 1982). Given "the important public interest in securing from public employees an accounting of their public trust[,] [p]ublic employees may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their official duties if they have not been required to surrender their constitutional immunity." Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977). The Fifth Amendment is violated only by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers. See Harrison v. Wille, 132 F.3d 679, 682 (11th Cir. 1998).

Here, Hill was neither forced to answer incriminating questions under threat of termination nor required to relinquish immunity from the use of his answers in criminal proceedings. He did not face the choice of either forfeiting his job or making a

statement that could be used to prosecute him. Contrary to Hill's assertion, the only reasonable inference from the record is that the meeting and the polygraph examination were part of the Sheriff's internal administrative investigation, not the criminal investigation. Before the meeting, Hill received a "Notice of Consideration of Disciplinary Action," stating "suspension, demotion, or termination is being considered." The transcript of the last meeting shows the Sheriff said it was an "administrative hearing, . . . not a criminal hearing," and that it concerned "disciplinary action." Hill was also told the polygraph "would be . . . strictly for administrative purposes only, not for any criminal purposes." Even if Hill was not expressly told that his answers at the meeting and polygraph examination could not be used against him in the criminal prosecution, the mere failure affirmatively to offer immunity is not an impermissible attempt to compel a waiver of immunity, see id. at 683; Gulden, 680 F.2d at 1075. Because Hill was not asked to waive his constitutional privilege against self-incrimination to answer job-related questions, his dismissal for refusal to answer does not violate that privilege. See Wiley v. Mayor & City Council, 48 F.3d 773, 777 (4th Cir. 1995); Gulden, 680 F.2d at 1074. As for the polygraph examination, it is undisputed that Hill did not even show up, and discharging Hill for refusing to participate at all did not violate his Fifth Amendment right against self-incrimination. See Gulden, 680 F.2d at 1075-76.

In sum, Hill failed to submit sufficient facts from which a reasonable jury could conclude that he was compelled to waive his Fifth Amendment rights. Hill's due process claim fails because it depends on a Fifth Amendment privilege to refuse to attend a polygraph as the basis for a protected property interest. Because the Sheriff's conduct did not violate a clearly established constitutional or statutory right of which a reasonable person would have known, the Sheriff and the officers are entitled to qualified immunity. We thus reverse the district court's denial of summary judgment on that ground.

HEANEY, Circuit Judge, dissenting.

Because Hill presented sufficient evidence to create a jury question as to whether the Sheriff and other officers (defendants) violated his clearly established Fifth Amendment rights of which a reasonable person would have known, I would affirm the district court's denial of defendants' motion for summary judgment on the basis of qualified immunity. I respectfully dissent.

The law is clear that public employees may not constitutionally be discharged for "refusal to expose themselves to criminal prosecution based on testimony which they would give under compulsion, despite their constitutional privilege." Uniformed Sanitation Men Ass'n., Inc. v. Commissioner of Sanitation, 392 U.S. 280, 283 (1968); see also Gardner v. Broderick, 392 U.S. 273, 279 (finding it unconstitutional to discharge a police officer for refusing to waive his Fifth Amendment privilege). In this case, a reasonable person in the defendants' position would have known of this right, and the fact that on one occasion Hill was advised of his Garrity rights shows that defendants did know of Hill's rights.

I disagree with the majority that in viewing the evidence in the light most favorable to Hill, the only reasonable inference is that the meeting and polygraph examination were part of the Sheriff's internal administrative investigation. Hill presented evidence showing that the nature of the January 29, 1997 request to appear for a polygraph test the following day and the February 6 hearing were ambiguous. Prior to these events, in early January, Hill had been given both Miranda and Garrity warnings. The Garrity warnings, administered by form before the January 10 meeting with the Professional Standards Unit, indicated that they were applicable for only that meeting.

Meanwhile, a criminal investigation was "ongoing" during this entire period. Hill stated in his deposition that he thought the request for the polygraph and the meeting with Johnson were part of the criminal investigation. Hill's belief was reasonable in light of the fact that some of the same people were involved with both the

criminal and administrative investigations, Hill witnessed communication between the parties involved in both investigations, and the February 6 meeting was with the Sheriff who could reasonably have been expected to oversee both of the investigations that were proceeding in his department. Viewing the evidence in the light most favorable to Hill, there can be no doubt that a reasonable juror could conclude that the polygraph test and meeting were part of the continuing criminal investigation. Even assuming that the hearing was administrative, Hill could still not be constitutionally discharged for refusing to waive his Fifth Amendment rights in answering questions at the meeting.

The heart of my disagreement with the majority lies principally in its statement that a mere failure affirmatively to offer immunity is not an impermissible attempt to compel a waiver under Uniformed Sanitation Men. Under this analysis, a public employer could discharge an employee for refusing to answer a question as long as there was no explicit request for a waiver, irrespective of whether the employee knew of the nature of the proceeding. I believe that this reading of the constitutional rights established in Uniformed Sanitation Men and Gardner is too narrow. See Gardner, 392 U.S. at 279 ("Petitioner could not have assumed--and certainly he was not required to assume--that he was being asked to do an idle act of no legal effect.").

As a practical matter, the majority's analysis impermissibly leaves public employees such as Hill uninformed and guessing as to how their statements may be used, what their constitutional rights are, and how to respond to ambiguous requests for statements, answers to questions, or a polygraph examination. I do not find this to be constitutionally allowable. See Benjamin v. City of Montgomery, 785 F.2d 959, 962 (11th Cir. 1986) ("[W]e cannot require public employees to speculate whether their statements will later be excluded under Garrity."). This burden is particularly troubling in this case where Hill was still not given explicit immunity after he expressed concerns about the nature of the meeting and the polygraph examination and asked to have his lawyer present. Absent a requirement that the employee's rights be clearly communicated, a public employer such as the Pulaski County Sheriff's Office will be

free to characterize any proceeding where it seeks to compel statements as "administrative" after the employee has been fired, and avoid the rights of public employees laid out by the Supreme Court in Uniformed Sanitation Men and Gardner.

Accordingly, I would hold that, given the ambiguity surrounding the nature of polygraph test and meeting and since Hill was not informed of his constitutional rights, defendants are unable to show, as a matter of law, that his discharge did not violate his clearly established Fifth Amendment rights. See Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 426 F.2d 619, 627 (2d Cir. 1970) (Uniformed Sanitation Men II) (holding that discharge of public employee who refused to account for his performance was constitutional only where the employee had refused after being "duly advised of his options and the consequences of his choice."); Confederation of Police v. Conlisk, 489 F.2d 891, 895 (7th Cir. 1973) (discharging policemen for refusing to answer questions in an Internal Affairs Division meeting where they were not informed that any information they gave would not be used against them in criminal proceedings was clearly unconstitutional under Uniformed Sanitation Men and Gardner); Kalkines v. United States, 473 F.2d 1391, 1393 (Ct. Cl 1973) (adopting procedures set forth in Uniformed Sanitation Men II).

Therefore, I would affirm the district court's denial of defendant's motion for summary judgment. A jury should be given the chance to determine whether defendants' actions were an attempt to compel a waiver of Hill's Fifth Amendment privilege and if Hill was discharged for refusing to waive those rights. I therefore respectfully dissent.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-