AMERICAN FEDERATION OF GOV-
ERNMENT EMPLOYEES, AFL–CIO,
NATIONAL COUNCIL OF HUD LO-
CALS, et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVEL-
OPMENT, et al., Defendants.

Civil A. No. 92–2184.

United States District Court,
District of Columbia.

Feb. 8, 1996.

Charles A. Hobbie, Deputy General Counsel, American Federation of Government Employees, Washington, D.C., Kevin M. Grile, Assistant General Counsel, American Federation of Government Employees, Chicago, IL, for Plaintiffs.

Edith S. Marshall, Assistant U.S. Attorney, Washington, D.C., for Defendants.

## OPINION

HAROLD H. GREENE, District Judge.

This Court is once again asked to define the limits as to what information the government may lawfully require its employees to provide about themselves. Plaintiffs,

the American Federation of Government Employees ("AFGE") and three individual Department of Housing and Urban Development ("HUD") employees, challenge the legality of the government's request for information and for authorization to collect information from third parties regarding many HUD employees.[1] Plaintiffs' claims rest on both constitutional and statutory grounds.

# I

## Background

Plaintiff AFGE represents current employees of HUD who, through their employment, may access HUD databases classified by the agency as "sensitive."[2]

The defendant Office of Personnel Management ("OPM"), an executive agency of the United States charged with administering various laws, rules and regulations pertaining to federal government employment, has issued a questionnaire designated as the Standard Form 85P ("SF85P") as well as a so-called release form. This release form authorizes federal agents to obtain virtually all public and private information about the individuals who sign the release.

If an employee refuses to submit a completed SF85P and release form he may be removed, reassigned, or demoted.

Plaintiffs challenge three provisions of the SF85P and the release:[3] (1) Question 21 which demands information about drug use and drug activities[4]; (2) Question 22 which demands information about the employee's financial history;[5] and (3) the release form.[6]

Plaintiffs have moved for summary judgment, seeking declaratory, injunctive, and

---

1. All HUD employees holding positions in which they have access to, and the ability to change, computer databases deemed "sensitive" by HUD are being so requested.

2. The three individual plaintiffs are James Wallace, a twenty-six year employee of HUD, Barry Linstrom, a twenty year employee of HUD, and Phillip Davis, an eight year employee of HUD.

3. The SF85P has been revised since the time this suit was filed. Plaintiffs, recognizing that revision was a possibility, have aimed their challenge at questions in the then current SF85P form, or "similar questions on a successor questionnaire." The Court will use the current SF85P provisions in its analysis.

4. Question 21 states in part:
(a) In the last year, have you *illegally* used any controlled substance, for example, marijuana, cocaine, crack cocaine, hashish, narcotics (opium, morphine, codeine, heroin, etc.), amphetamines, depressants (barbiturates, methaqualone, tranquilizers, etc.), hallucinogenics (LSD, PCP, etc.), or prescription drugs?
(b) In the last 7 years, have you been involved in the illegal purchase, manufacture, trafficking, production, transfer, shipping, receiving, or sale of any narcotic, depressant, stimulant, hallucinogen, or cannabis, for your own intended profit or that of another?
If the employee's answer to Question 21a is "yes," the employee is asked to provide information relating to the types of substance(s), the nature of the activity, and any other details relating to his or her involvement with illegal drugs, including any treatment or counseling received.
There are further questions regarding drug use and drug activities in Supplemental Questionnaire Question 3. The Court's analysis extends

to this provision as well as to Question 21. Both questions note that the employee's truthful responses and information derived from his or her responses will not be used as evidence against the employee in any subsequent criminal proceeding.

5. Question 22 asks:
(a) In the last 7 years, have you, or a company over which you exercised some control, filed for bankruptcy, been declared bankrupt, been subject to a tax lien, or had legal judgment rendered against you for a debt? . . . .
(b) Are you now over 180 days delinquent on any loan or financial obligation? . . . .
If the answer is yes to Question 22a, there are follow up questions regarding the name, date, and type of action. If the employee answers "yes" to Question 22b, he or she is required to give the type of loan or obligation and the name and address of the creditor or obligee.

6. The release form, once signed, authorizes any representative of the Federal agency conducting a background investigation to obtain "any information relating to" the individual's "activities from individuals, schools, residential management agents, employers, criminal justice agencies, credit bureaus, consumer reporting agencies, collection agencies, retail business establishments, or other sources of information. This information may include, but is not limited to," the individual's "academic, residential, achievement, performance, attendance, disciplinary, employment history, criminal history record information, and financial and credit information." The release provides that a separate specific release may be required for certain financial and health-related information.

other relief. The government has moved to dismiss or for summary judgment.

## II

### Standing

The government argues that neither the individually named plaintiffs nor AFGE have standing to bring this suit.

### A. Standing of Individual Plaintiffs

■ The individual plaintiffs are said to lack standing because they have not suffered injury in fact. *See Albuquerque Indian Rights v. Lujan,* 930 F.2d 49, 54 (D.C.Cir. 1991). The injury which plaintiffs claim to have suffered is that they are being forced to reveal inherently personal information. The government contends that plaintiffs are not compelled to complete the SF85P, and thus there is no injury.

As a practical matter, completion of the questionnaire and the release form is directly required of HUD employees whose jobs require access to databases deemed "sensitive" by HUD. HUD has communicated to individual plaintiffs that they would not be able to access databases necessary for their work unless and until they submitted a completed SF85P and release form. The government itself repeatedly characterizes the SF85P as a "requirement." *See, e.g.,* Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment p. 9. In addition, as indicated, HUD may remove, demote, or reassign any employee who fails to submit the completed form. *Cf. Webster v. Department of the Army,* 911 F.2d 679, 684–85 (Fed.Cir.1990), *cert. denied,* 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991) (refusal or willful failure to follow direct order of supervision may be grounds for discipline, including removal). It would be a divorce from reality to hold that there is no compulsion here.

The Court concludes that the jeopardy to the careers of the individual plaintiffs from their failure to comply with the government's demands gives them standing.

### B. Standing of AFGE Union

■ AFGE asserts its claims in its representational capacity. A union may represent its members in litigation if

(a) its members would otherwise have standing to sue in their own rights; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires´ the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

As noted above, AFGE's members do have standing to sue in their own rights. Further, the interests which AFGE seeks to protect are patently germane to the organization's purposes. Finally, neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

This is not a case such as the one with which this Court was confronted in *National Treasury Employees Union v. United States Dep't of Treasury,* Civ. 92–1150, 1993 WL 835593 (D.D.C. February 12, 1993). In *NTEU,* the union challenged a questionnaire on behalf of virtually all employees in the agency. The Court determined that "[a]t a minimum, the plaintiff class must be narrowly tailored in such a way that their constitutional claims are similar." *Id.,* slip op. at 10. In the instant case, AFGE is bringing suit only on behalf of its members who have access to and the ability to alter sensitive HUD databases. All these union members perform similar functions. It is appropriate, therefore, for the union to represent this distinct group of employees. The Court finds that AFGE has standing.

## III

### Drug Use and Activities Inquiry

■ Plaintiffs claim that Question 21 regarding drug use during the last year and involvement in illegal drug activities within the last seven years violates their Fifth Amendment right against self-incrimination and their constitutional right to privacy.[7]

---

7. Plaintiffs present claims based on the Privacy Act and request that the Court provide injunctive

## A. Fifth Amendment Claim

■ Both SF85P Question 22 and Supplemental Questionnaire Question 3 state that neither the employee's truthful responses nor information derived from his or her responses will be used as evidence against the employee in any subsequent criminal proceeding. The law provides that answers may be compelled regardless of the privilege against self incrimination if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person. *Gardner v. Broderick*, 392 U.S. 273, 276, 88 S.Ct. 1913, 1915, 20 L.Ed.2d 1082 (1968). The statements in the forms are the equivalent of immunity, and there is thus no violation of plaintiffs' Fifth Amendment rights.

## B. Constitutional Right to Privacy

■ Plaintiffs next claim that the questions regarding drug use and other drug activities violate their constitutional right to privacy.

■ The Constitution protects a citizen's privacy interest, *inter alia*, with respect to personal information with which the government does not have a legitimate concern. *Whalen v. Roe*, 429 U.S. 589, 598–99, 97 S.Ct. 869, 875–76, 51 L.Ed.2d 64 (1977); *Ramie v. City of Hedwig Village, Tex.*, 765 F.2d 490, 492 (5th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986).

■ The constitutional right to avoid disclosure of personal information is not absolute. *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 110 (3d Cir.1987). Thus, to determine whether the SF85P questions relating to drug use and drug activities violate plaintiffs' rights, the Court must balance the individuals' interests in nondisclosure against the government's interest in obtaining the information. *United*

States v. Westinghouse Elec. Corp., 638 F.2d 570, 578 (3rd Cir.1980); *Plante v. Gonzalez*, 575 F.2d 1119, 1134 (5th Cir.1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979); *National Treasury Employees Union v. United States Dep't of Treasury*, 838 F.Supp. 631, 636 (D.D.C.1993).

Initially, the Court considers whether the employee has a legitimate expectation that he or she will be able to keep the information confidential. *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d at 112–113. It may well be that with the drug menace widespread in this society, government employees may have a lessened expectation of being able to keep their connection with drugs secret from their employer. But that does not mean that a government employee loses all expectation of privacy. This is so particularly because the plaintiffs here are government employees, not job applicants. *Willner v. Thornburgh*, 928 F.2d 1185, 1190–92 (D.C.Cir.), *cert. denied*, 502 U.S. 1020, 112 S.Ct. 669, 116 L.Ed.2d 760 (1991); *National Treasury Employees Union v. United States Dep't of Treasury*, 838 F.Supp. at 637–38.

The government contends that eliciting a response to the questions about drug use and drug activities is necessary to its efforts to maintain the integrity of the Department of Housing and Urban Development, suggesting that employees actively involved in substance abuse or other illegal drug activities may be subject to substantial financial pressures, heightened susceptibility to coercion or undue influence, or general unreliability. While this is a valid governmental interest, in the context of a housing agency it is far removed from a direct interest. The Court will therefore balance this government interest against the employees' interests, considering whether a nexus exists between the information sought and the employees' work responsibilities.[8]

relief to remedy violations of the Act. The Privacy Act provides for a Court to provide injunctive relief for only two specified violations of the Act, neither of which is present here. *See* 5 U.S.C. § 552a(g)(2)(A) and (B). The Act precludes injunctive relief in all other cases. *Hastings v. Judicial Conference of the United States*, 770 F.2d 1093, 1104 (D.C.Cir.1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986);

*Parks v. United States Internal Revenue Serv.*, 618 F.2d 677, 684 (10th Cir.1980); *Edison v. Department of the Army*, 672 F.2d 840, 846–47 (11th Cir.1982). The Court therefore rejects the Privacy Act claims.

**8.** On this basis *National Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286 (D.C.Cir.1993) is distinguishable from the instant case in that the

Drug testing jurisprudence is instructive as to what type of a nexus must be shown. Courts have upheld random drug testing when employees have access to narcotics at part of their work duties, *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 668, 109 S.Ct. 1384, 1392, 103 L.Ed.2d 685 (1989), when employees have access to information bearing on national security, *Harmon v. Thornburgh*, 878 F.2d 484, 491–92 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990), and when employees hold positions in which drug use would pose an immediate threat to public safety. *American Fed'n of Gov't Employees, AFL–CIO v. Skinner*, 885 F.2d 884, 892 (D.C.Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1960, 109 L.Ed.2d 321 (1990). But this nexus must be more than speculative. *National Treasury Employees Union v. Yeutter*, 918 F.2d 968, 974 (D.C.Cir.1990).

There is no allegation here that the HUD employees' duties involve access to controlled dangerous substances, or to information which could jeopardize national security. Nor is there any allegation that the HUD employees hold positions in which their drug use would pose a threat of immediate harm to the public.

Moreover, there are less intrusive means by which the government could achieve its limited purposes. Plaintiffs are current employees of HUD, working in a traditional office environment. The government obviously has the opportunity to observe the employees daily at work and watch for signs of drug problems. *Cf. Harmon v. Thornburgh*, 878 F.2d at 489. Moreover, the government can relatively accurately predict employee trustworthiness based on answers to the many questions on the SF85P which plaintiffs are not challenging.[9]

The individual plaintiffs present an even more compelling case for striking the SF85P drug use and activity questions. Mr. Wallace has worked for HUD for approximately twenty-six years; he apparently has had access to sensitive HUD databases for at least four years; and he is currently employed by HUD as a Regional Resident Initiatives Coordinator. Mr. Linstrom has worked for HUD for approximately seventeen years as a financial analyst responsible for overseeing expenditures of monies by HUD grant recipients. In order to perform some of his job duties, Linstrom must access a "sensitive" HUD database. Mr. Davis has been employed by HUD for approximately eight years; he has worked as a Resident Initiatives Coordinator for the last four years; and to perform some of his job duties, he must access "sensitive" HUD databases.

The three individual plaintiffs are all long-term employees of HUD. In each case, HUD has had ample opportunity to observe them at work, to watch for signs of drug use and activities, and to evaluate their job performances. All three have always received job performance ratings of satisfactory or higher and have never been subject to disciplinary action. Moreover, none of the individual plaintiffs has the authority to approve funds for the recipients of HUD monies through the computer system beyond the predefined dollar amounts established in the system edits by HUD.

Considering all relevant factors, this Court concludes that the government has not presented an adequate justification for compelling disclosure of the drug history of the individual plaintiffs or of the HUD employees represented by AFGE simply on the basis of the fact that they have access to databases deemed "sensitive" by HUD.

plaintiffs in *Greenberg* were in some cases entrusted with the nation's secrets.

9. For example, the SF85P demands that the individual provide: many references (Questions 9, 10, 11, and 13); information about his employment history for the past seven years (Question 11); indications as to whether he has ever been fired, quit a job after being told he would be fired, left a job by mutual agreement following allegations of misconduct, left a job by mutual agreement following allegations of unsatisfactory performance, or left a job for other reasons under unfavorable circumstances (Question 12); information regarding the person's military (Question 16) and selective service (Question 17) records; information regarding prior government investigations of the individual for a security clearance (Question 18); and information regarding the individual's criminal history (Question 20).

## IV

### Financial History Questions

 As indicated, plaintiffs also challenge Question 22, which demands information about their financial history, as violating their constitutional right to privacy. Financial matters are very personal and are entitled to constitutional protection. • *Plante v. Gonzalez,* 575 F.2d at 1136. The Court must once again balance plaintiffs' interest in avoiding disclosure of the information against the government's interest in obtaining such disclosure.

The government again asserts as its interest in disclosure that the information to be elicited is crucial to its ability to ensure that employees with access to sensitive computer databases at HUD are not under financial or other pressures that might undermine their trustworthiness or reliability. The Court again notes that the government's interest is greatly diminished by the fact that plaintiffs are current employees working for HUD in an office environment and that the employees provide an extensive amount of information in response to the unchallenged portions of the SF85P. Indeed, none of the individual plaintiffs has the ability to approve any funds for the recipients of HUD monies through the computer system beyond the predefined dollar amount established in the system edits by HUD. Beyond this, if financial information can be coerced on so flimsy and far-fetched a basis, nothing in the employees' life would be immune from government intrusion.

Accordingly, the Court grants plaintiffs' motion as to its claim that Question 22 violates the constitutional right to privacy of the individual HUD employees as well as that of the HUD employees represented by AFGE.

## V

### Release Form

 Plaintiffs challenge the SF85P Release Form on various constitutional and statutory grounds. That form authorizes the government to obtain practically any and all information that it wants to know about an individual. It leaves nothing untouched, affording authority to the government to obtain information from practically any source about any aspect of an employee's life, no matter how unrelated it may be to the employee's job performance. The Court cannot imagine any government interest, with the possible exception of direct threats to national security, under which such so vast an intrusion by the government could be justified.

Individuals do not give up every expectation of privacy simply because they are on the government payroll. Our country is founded on notions of individual freedoms and rights. It would be ironic if the employees charged with helping to ensure some of these rights were themselves deprived of them. The Court concludes that the government has failed to present any interests which would justify so intrusive an interference in the private lives of its employees.

Accordingly, plaintiffs' motion for summary judgment will be granted as to the release form. Neither the individual plaintiffs, nor the HUD employees represented by AFGE, may be required to complete the release. The release forms executed by HUD employees represented in this case shall be removed from the government's files and returned to the employees who executed them.

### ORDER

In consideration of the Memorandum issued this date, it is this 8th day of February, 1996

ORDERED that plaintiffs' motion for summary judgment be and it is hereby GRANTED; and it is further

ORDERED that plaintiff's motion for a permanent injunction be and it is hereby granted; and it is further

ORDERED that defendants are permanently enjoined from requiring plaintiffs to complete the provisions of the SF85P demanding information about (1) an employee's drug use and drug activities or (2) an employee's financial history; and it is further

ORDERED that defendants are permanently enjoined from requiring plaintiffs to

**232**

complete the SF85P release form; and it is further

ORDERED that, with regard to questionnaires already completed by the individual plaintiffs and by HUD employees represented by AFGE, information given in response to the challenged provisions be removed from the government's records and the release forms be returned to the employees who executed them.