AMERICAN FEDERATION OF GOV-
ERNMENT EMPLOYEES, AFL–
CIO, et al., Plaintiffs,

v.

William PERRY, Secretary of Defense,
et al., Defendants.

Civil Action No. 92–1779 (HHG).

United States District Court,
District of Columbia.

Feb. 23, 1996.

Stuart A. Kirsch, American Federation of Government Employees, College Park, GA, for Plaintiffs.

Edith S. Marshall, Assistant U.S. Attorney, Washington, DC, for Defendants.

## OPINION

HAROLD H. GREENE, District Judge.

Plaintiffs, the American Federation of Government Employees ("AFGE") and four indi-

vidual non-supervisory civilian Department of Defense ("DOD") employees holding positions requiring a secret security clearance, challenge the legality of the government's request for information and for authorization to collect information from third parties. Plaintiffs' claims rest on both constitutional and statutory grounds.

## I

### Background

Plaintiff AFGE represents current non-supervisory civilian DOD employees holding positions requiring a secret security clearance. DOD performs periodic reinvestigations of these employees to determine their continued suitability. In addition, DOD performs special investigative inquiries ("SII"s) any time a question arises as to an employee's qualifications to hold a secret security clearance.

Defendant Department of Defense has drafted and implemented security questionnaires for use in these reinvestigations.[1] Completion of a security questionnaire entails signing a release that purports to authorize an accredited DOD employee to obtain virtually all public and private information about the individual who signs the release. An employee refusing to submit a completed questionnaire and release form may lose his security clearance and be reassigned or removed.

Plaintiffs challenge five provisions of the security questionnaires: (1) questions demanding information about the employee's criminal history;[2] (2) questions demanding information about any kind of drug use and drug activities;[3] (3) questions demanding information about the employee's mental health;[4] (4) questions demanding information about the employee's credit history; and (5) the release form.[5]

Plaintiffs have moved for summary judgment, seeking declaratory, injunctive, and other relief. The government has moved to dismiss or for summary judgment.

## II

### Standing

The government argues that AFGE does not have standing to bring this suit.

█ A union may represent its members in litigation if

> (a) its members would otherwise have standing to sue in their own rights; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

With respect to AFGE's privacy and APA claims, the government concedes, and the

---

1. At the time this suit was filed, DOD used two security questionnaires, DD Form 398–2 and DD Form 398. These two forms have been supplanted by the Standard Form 86 ("SF86").

2. This includes arrests but not traffic violations.

3. The current SF86 provides specifically that an employee's truthful responses will not be used against him in subsequent criminal proceedings.

4. DD Form 398–2 and DD Form 398 provide in relevant part:

    e. Have you ever been treated for a mental, emotional, psychological, or personality disorder/condition/problem?
    f. Have you ever consulted or been counseled by any mental health professional?
    The current SF86 demands similar information, but is limited to the last 7 years.

5. The DD Form 398–2 and DD Form 398 release forms, once signed, authorized any representative of the Department of Defense to obtain "any information relating to" the individual's "activities from individuals, schools, residential management agents, employers, criminal justice agencies, financial or lending institutions, credit bureaus, consumer reporting agencies, retail business establishments, medical institutions, hospitals or other repositories of medical records. This information may include, but is not limited to," the individual's "academic, residential, achievement, performance, attendance, personal history, disciplinary, criminal history record, arrest, conviction, medical, psychiatric/psychological, and financial and credit information."

    The current SF86 release is virtually identical, but provides that for certain types of information a separate release may be required.

Court agrees, that the first two prongs of *Hunt* are satisfied. The issue for the Court is whether the claims asserted or the relief requested require the participation of individual union members in the lawsuit.

In *National Treasury Employees Union v. Department of the Treasury*, this Court held that to have representational standing, a union must represent a class of employees which is narrowly tailored such that the employees' claims are similar and the government's need for the compelled information would presumably be the same as to all such employees. No. 92–1150, slip op. at 10, 1993 WL 835593 (D.D.C. Feb. 12, 1993). In the instant case, AFGE represents virtually all non-supervisory civilian employees within DOD holding positions requiring a secret security clearance. In this posture, AFGE bears the burden of showing that no set of circumstances exist under which the challenged provisions would be lawful. *National Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 294 (D.C.Cir.1993).

■ Civilian non-supervisory employees hold various positions and perform various functions within DOD. It is unquestionable that the government may legitimately ask the challenged questions of some non-supervisory civilian DOD employees holding positions requiring a secret security clearance. As such, the participation of individual employees is required for the Court to adjudicate plaintiffs' claims; or at least the plaintiff class must be more narrowly tailored so that their claims are similar.

Similar reasoning defeats AFGE's standing with respect to the Fifth Amendment claim. For these reasons, AFGE lacks standing.

### III

### Criminal History

Individual Plaintiffs claim that the scope of the questions demanding information about their criminal history, without regard to the outcome of the charges, violate their constitutional right to privacy.

■ The Constitution protects a citizen's privacy interest, *inter alia*, with respect to

personal information with which the government does not have a legitimate concern. *Whalen v. Roe*, 429 U.S. 589, 598–99, 97 S.Ct. 869, 875–76, 51 L.Ed.2d 64 (1977); *Ramie v. City of Hedwig Village, Tex.*, 765 F.2d 490, 492 (5th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986).

■ To determine whether the criminal history questions violate plaintiffs' rights, the Court must balance the individuals' interests in nondisclosure against the government's interest in obtaining the information. *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir.1980); *Plante v. Gonzalez*, 575 F.2d 1119, 1134 (5th Cir.1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979); *National Treasury Employees Union v. United States Dep't of Treasury (hereinafter "NTEU")*, 838 F.Supp. 631, 636 (D.D.C.1993).

■ It is clear from the Supreme Court's holding in *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976), and the Court of Appeals' statements in *Greenberg*, 983 F.2d at 294, that an individual has a very limited expectation of privacy with respect to a public act such as an arrest, charge, or conviction. However, this Court does find a strong privacy interest with respect to an arrest, charge, or conviction which has been expunged or otherwise erased from the court record. *See Natwig v. Webster*, 562 F.Supp. 225, 226 n. 1 (D.R.I. 1983); *cf. United States Department of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762–71, 109 S.Ct. 1468, 1476–81, 103 L.Ed.2d 774 (1989); *Utz v. Cullinane*, 520 F.2d 467, 481–83 (D.C.Cir.1975). Once an arrest, charge, or conviction is expunged from an individual's records, he expects, rightly so, that he will not be called to answer for such events. This expectation of privacy is heightened by the fact that plaintiffs here are government employees, not job applicants. *Willner v. Thornburgh*, 928 F.2d 1185, 1190–92 (D.C.Cir.), *cert. denied*, 502 U.S. 1020, 112 S.Ct. 669, 116 L.Ed.2d 760 (1991); *NTEU*, 838 F.Supp. at 637–38.

■ The government asserts that its interest in obtaining arrest information regardless of the ultimate outcome of the matter

rests on the fact that in many circumstances an arrest is indicative of conduct casting doubt on an individual's integrity and trustworthiness. The criminal history of a DOD employee is certainly relevant to making a determination of the employee's reliability and trustworthiness. However, the government's inquiry may not extend to those arrests, charges, and convictions which have been expunged or otherwise stricken from the record. As to one plaintiff, there is a claim made that an arrest which he was forced to disclose had been expunged from his records. If he is able to present proof that the conviction has been expunged or otherwise stricken from the record, the Court will consider his claim.

## IV

### Drug Use and Activities Inquiry

Plaintiffs claim that the questionnaire provisions demanding information about drug use and drug activities violate their constitutional right to privacy and their Fifth Amendment rights against self-incrimination.

### A. Constitutional Right to Privacy

■ As this Court stated in *AFGE v. HUD*, 924 F.Supp. 225, 229 (D.D.C.1996), it may well be that with the drug menace widespread in this society, government employees may have a lessened expectation of being able to keep their drug activities secret from their employer. But that does not mean that a government employee loses all expectation of privacy. Again, this is so particularly because the plaintiffs here are government employees, not job applicants. *Willner v. Thornburgh*, 928 F.2d at 1190–92; *NTEU*, 838 F.Supp. at 637–38.

■ The Court must balance the government interest in disclosure against the employees' privacy interests, considering whether a nexus exists between the information sought and the employees' work responsibilities. As this Court stated in *AFGE v. HUD*, absent an indication of drug use, the government may compel disclosure of drug use and drug activities only if there is some nexus between drugs and the employee's work responsibilities. 924 F.Supp. at 229–30.[6]

■ With respect to two of the individual plaintiffs, there is no indication that their positions involve access to controlled dangerous substances, or to information which could jeopardize national security. Nor is there any allegation that either holds a position in which drug use would pose a threat of immediate harm to the public. In addition, the Court would point out that the government's interest in compelling disclosure of information relating to drug use and drug activities from these two plaintiffs is greatly diminished by the fact that these are long-term employees whom DOD has had much opportunity to observe for signs of unreliability. Moreover, the government should be able to make a relatively accurate prediction of the employees' trustworthiness based on their answers to the multitude of questions not challenged here.[7] With respect to these two plaintiffs, the Court finds that the government has not presented an adequate justification for compelling disclosure of the requested information.

■ The other two plaintiffs present a much different case. These two individuals

---

**6.** Drug testing jurisprudence is instructive as to what type of a nexus must be shown. Courts have upheld random drug testing when employees have access to narcotics as part of their work duties, *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 668, 109 S.Ct. 1384, 1392, 103 L.Ed.2d 685 (1989), when employees have access to information bearing on national security, *Harmon v. Thornburgh*, 878 F.2d 484, 491–92 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990), and when employees hold positions in which drug use would pose an immediate threat to public safety. *American Fed'n of Gov't Employees, AFL–CIO v. Skinner*, 885 F.2d 884, 892 (D.C.Cir.1989),

*cert. denied*, 495 U.S. 923, 110 S.Ct. 1960, 109 L.Ed.2d 321 (1990). But this nexus must be more than speculative. *National Treasury Employees Union v. Yeutter*, 918 F.2d 968, 974 (D.C.Cir.1990).

**7.** For example, the questionnaires demand that the individual provide: his military service history; a list of roommates for the last five years; information regarding foreign travel and foreign connections; information regarding prior government investigations for a security clearance; his employment history; and personal and credit references.

informed the government that they had drug and alcohol problems. Moreover, they both took leaves of absence from work to obtain treatment and counseling for these problems. As such, the government may certainly follow up on these matters.

## B. Fifth Amendment Claim

██ Plaintiffs contend that the questionnaire provisions dealing with drug use and drug activities violate their Fifth Amendment rights against self-incrimination.

At the outset the Court notes that the current SF86 provides that neither an employee's responses nor information derived from those responses will be used as evidence against the employee in any subsequent criminal proceeding. This statement is the equivalent of immunity. As the law provides that answers may be compelled regardless of the privilege against self incrimination if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person, *Gardner v. Broderick*, 392 U.S. 273, 276, 88 S.Ct. 1913, 1915, 20 L.Ed.2d 1082 (1968), any use of the current SF86 would not violate the employees' Fifth Amendment rights.

██ The DD Form 398-2 and DD Form 398, however, did not contain a statement of immunity. The Court must therefore determine whether DOD violated the plaintiffs' Fifth Amendment rights by compelling them to provide answers to the drug use and drug activity questionnaire provisions.

The Fifth Amendment privilege protects against compelled disclosures that an individual reasonably believes could be used in a criminal prosecution against him or could lead to other evidence that might be so used. *Kastigar v. United States*, 406 U.S. 441, 445, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). Two of the individual plaintiffs were required to provide information which they reasonably could have believed could potentially incriminate them. This is particularly so in light of the fact that the Privacy Act Statement accompanying the DD Form 398 and the DD Form 398-2 expressly provided that a routine use of the information provided in response to the questionnaire was to give it to "federal, state, local, or foreign law enforcement authorities if the record indicates, on its face or in conjunction with other records, a violation of law." Thus, the crucial inquiry is whether the two plaintiffs were compelled to provide the information in response to the drug use and drug activity questions.

The government contends that employees were not so compelled. As a practical matter this position is untenable. By requiring the employees to choose between refusing to answer the questionnaire and possibly losing their security clearances and thus their jobs, or answering the incriminating drug use and drug activity questions, coupled with the express warning in the Privacy Act Statement that their answers could be used against them in a subsequent criminal prosecution, the government effectively coerced a waiver of immunity. *NTEU*, 838 F.Supp. at 639.

In sum, the Court finds that the employees' responses were compelled, and that plaintiffs' Fifth Amendment rights against self-incrimination were violated.

## V

### Financial History Questions

██ Plaintiffs also claim that the questionnaire provisions demanding information about their financial history violate their constitutional right to privacy. Financial matters are private and are entitled to constitutional protection. *Plante v. Gonzalez*, 575 F.2d at 1136. These privacy interests must be balanced against the government's interest in compelling disclosure.

██ Three of the plaintiffs hold positions in which they have no access to or control over financial matters. The fact that one of them sometimes performs cement finishing work in areas in which sensitive information is stored is not a sufficient basis on which to require disclosure of his finances.

The government claims that the financial information is critical to its determination of the employees' suitability for a security clearance. Again this interest is greatly diminished by the fact that the plaintiffs are current

DOD employees and that the employees provide an extensive amount of information in response to other portions of the security questionnaire. Allowing the government to compel disclosure of financial information on so flimsy a basis as the one asserted here would render the constitutional right to privacy a nullity.

■ The facts surrounding the fourth plaintiff's claim are somewhat different and tip the balance in favor of compelling disclosure. As this individual has the authority to bind the government in contractual matters and is responsible for ensuring contractor compliance, he may be subject to a great degree of financial temptation in performing his everyday duties. On this basis, the Court finds that the government may legitimately compel him to provide information regarding his finances.

## VI

### Mental Health and Counseling Questions

■ Plaintiffs claim that the questionnaire provisions demanding information regarding their mental health violate their constitutional right to privacy. Plaintiffs have a protected privacy interest in information relating to any mental health counseling and treatment which they have received. *Cf. United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3d Cir.1980). It is difficult to imagine any information more inherently personal than that at issue here. The government contends that information regarding the employees' mental health is pertinent to making a predictive judgment of reliability and trustworthiness. The Court must once again balance the individual plaintiffs' privacy interests against the government's interest in compelling disclosure.

■ With respect to two of the individual plaintiffs, there is no claim that either of them performs job duties directly affecting national security. In addition, the government has observed these two individuals at work for decades and has not seen any indication of emotional problems affecting their work. On this basis, the Court finds that the government has failed to justify so intrusive

an interference in the private lives of these two plaintiffs.

■ The other two plaintiffs, however, present a different situation. Both have identified substance abuse problems and have taken leaves of absence from work to obtain counseling and treatment for their problems. As to these two plaintiffs, the government has reason that they may suffer from emotional problems which will affect their work performance. As such, the Court finds that the government's inquiry was justified with respect to these two individuals.

## VII

### Release Form

■ Finally, plaintiffs challenge the Release Form on various constitutional and statutory grounds. That form leaves nothing untouched, affording authority to the government to obtain information from practically any source about any aspect of an employee's life, no matter how unrelated it may be to the employee's job performance. The Court cannot imagine any government interest, with the possible exception of direct threats to national security, under which such so vast an intrusion by the government could be justified.

In the instant case, the government has not shown that even one of the individual plaintiffs is in a position to pose a direct threat to national security. Individuals do not give up every expectation of privacy simply because they are on the government payroll. Nor do they give up every expectation of privacy simply due to the fact that they work for DOD. The Court concludes that the government has failed to present any interests which would justify so intrusive an interference in the private lives of the plaintiffs in this case.

Accordingly, plaintiffs' motion for summary judgment will be granted as to the release form. The individual plaintiffs may not be required to complete the release. The release forms already executed shall be re-

moved from the government's files and re-turned to the employees who executed them.