In the Matter of the REPORTS OF THE SARATOGA COUNTY GRAND JURY FOR THE MARCH, 1979 TERM. DISTRICT ATTORNEY OF SARATOGA COUNTY, Appellant. PUBLIC SERVANT NAMED IN REPORT R-A, Respondent.

In the Matter of the REPORTS OF THE SARATOGA COUNTY GRAND JURY FOR THE MARCH, 1979 TERM. DISTRICT ATTORNEY OF SARATOGA COUNTY, Appellant. PUBLIC SERVANT NAMED IN REPORT R-B, Respondent.

Third Department, December 11, 1980

## APPEARANCES OF COUNSEL

*David A. Wait, District Attorney*, for appellant.

*Joseph A. Martino* for Public Servant Named in Report R-A, respondent.

*Paul E. Cheeseman* for Public Servant Named in Report R-B, respondent.

### OPINION OF THE COURT

*Per Curiam.*

In March of 1979, the Grand Jury of Saratoga County commenced an investigation into a suspected bribe-taking scheme allegedly in operation in one of its towns. At the conclusion of this inquiry, it issued Report R-A and Report R-B and presented them to the Supreme Court for filing and acceptance as a public record pursuant to CPL 190.85 (subd 2). The Supreme Court disagreed with the findings of the Grand Jury and by its order and decision, entered September 28, 1979, refused to accept the reports and ordered that they be forever sealed. The District Attorney of Saratoga County has appealed. Though similar, the reports require separate treatment and the officials concerned will be referred to by the capital letter which identifies the respective report so as not to reveal the identity of the individuals involved.

### REPORT R-A

 This report charged that Mr. A had refused to provide the Grand Jury with a valid and effective waiver and prevented it from obtaining any meaningful or useful accounting by him of his performance as a public officer as it concerned the subject matter of the investigation and found that this "conduct constituted misconduct, nonfeasance and neglect in his public office". The report recommended that Mr. A be removed from office or that other disciplinary action be taken. The Grand Jury minutes of June 19, 1979 indicate that Mr. A had signed a waiver

of immunity prior to his appearance that day. They also indicate that after inquiry as to his name and address he was asked to identify the waiver he had executed and acknowledged before an Assistant District Attorney, which he did. He was then asked if he swore "to the contents of that waiver of immunity before this Grand Jury" (CPL 190.45, subd 2). Thereupon, Mr. A embarked on a rather lengthy dissertation in which he made reference to several prior conferences with the District Attorney, coercion of public officials and their constitutional rights as well as to his desire to testify and to co-operate. Extended questioning by the District Attorney brought, for the most part, unresponsive or evasive answers. However, though Mr. A had originally indicated that he would not waive any constitutional rights, subsequently, as the District Attorney pressed on, he did swear to the waiver, while attempting to invoke inconsequential limitations. Further pursuance of the issue was interrupted by the foreman of the Grand Jury who requested that they take a "coffee break" during which he could confer with the District Attorney and after which they would resume. However, the proceeding was terminated, and Mr. A was never questioned regarding the manner in which he conducted the affairs of his office or any related matter, the Grand Jury having apparently concluded that Mr. A had refused to validly and effectively waive immunity. Thereafter the Grand Jury rendered its Report R-A. The Supreme Court agreed that Mr. A had not effectively waived immunity but found the procedures impermissible largely upon the authority of *Gardner v Broderick* (392 US 273, 279) wherein the United States Supreme Court held that "the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment". Since there was ample evidence in the record to support its finding that Mr. A had justification to believe that he would be removed from office if he did not properly waive immunity, we agree with the Supreme Court on that issue.

However, we are not ready to conclude, under the unusual and peculiar circumstances presented here, that Mr. A

failed to effectively waive his immunity. True it is that initially Mr. A indicated that he would waive no constitutional /rights. Nevertheless, as the District Attorney labored on with his questioning of Mr. A, he received the following responses: "I swear to this paper [waiver] within the perspective of what it says here and I hope that you would explain that to the Grand Jury"; "I waive them [constitutional rights] within the limitation of the waiver". Moreover, when asked whether he swore to the fact that he would not be entitled to any immunity or privilege on account of his testimony, he replied "as it is stated and limited to that paper [waiver], yes".

CPL 190.45 (subd 2) provides that: "[a] waiver of immunity is not effective unless and until it is sworn to before the grand jury conducting the proceeding in which the subscriber has been called as a witness." Its purpose is to provide the Grand Jury itself, independent of the prior execution of the waiver, with the opportunity to discover whether the prospective witness knowingly and meaningfully renounces his fundamental right, guaranteed him by the Constitution, that no person shall be compelled in any criminal case to be a witness against himself. Compliance does not require a parroting of the precise language of the waiver but is satisfied where the prospective witness indicates his desire and willingness to waive any and all immunity that he would otherwise receive with respect to the testimony he gives (*People v Rice*, 93 Misc 2d 182). While the questions propounded and the responses thereto lacked orderliness and specificity, analysis of the colloquy in its entirety fairly dictates the conclusion that Mr. A expressed that desire and willingness to waive his immunity. He was not unfamiliar with the relevant law and was aware of recent cases on the subject as evidenced by his reference in the colloquy to section 6 of article I of the New York Constitution and to the cases of *Gardner v Broderick (supra)*, *Perla v New York* (392 US 296, revg 21 NY2d 608), *Spevack v Klein* (385 US 511) and *People v Avant* (33 NY2d 265). In essence, these cases and others cited therein hold that it is impermissible and coercive to compel a public official to waive his privilege against self-incrimination on penalty of losing his job and the right to hold public office and

that such compelled testimony may not be used as a basis for subsequent prosecution of the witness. While Mr. A was, at times, hesitant and evasive, the limitations or qualifications he sought to impose were not upon his willingness to testify or to waive his immunity, but rather were directed at other rights he might have if it were subsequently established that threats had been made as to his removal from office if he refused to effectively waive immunity. Accordingly, we find that Mr. A did effectively waive immunity.

Mr. A's contention that the report should be expunged is without merit. His name has been withheld from any public record and his identity obscured so that he is amply protected through the sealing of the report. While the court may, in the exercise of judicial discretion, provide for expunction or redaction (see *Matter of Report of March 1980 Grand Jury of Supreme Ct. of Ulster County*, 77 AD2d 58), there is no showing that the court should have done so here. Mr. A's other contention is without substance in this record.

Since Report R-A is bottomed solely upon the conclusion that Mr. A refused to waive immunity, the order forever sealing Report R-A should be affirmed.

### REPORT R-B

■ Report R-B charges Mr. B with having refused to testify before the Grand Jury unless granted immunity from subsequent criminal prosecution, with using his office to promote private business interests and with solicitation of political contributions in violation of the town's code of ethics for public office holders. It also recommends that he be removed from office. The court has been advised that Mr. B voluntarily resigned his office in July of this year. Since the only recommendations made by the Grand Jury were that Mr. B be removed from office and that its report be accepted by the court and be made public, this latter issue is all that remains. The long-established holdings to the effect that a Grand Jury may not issue reports which are critical of public officials but which do not allege the commission of a crime or recommend that the official be disciplined for alleged misconduct were modified by the passage of section

253-a of the Code of Criminal Procedure (now embodied in CPL 190.85). The stated purpose of this statute was to invest the Grand Jury with the power to report "non-criminal misconduct or neglect in public office" (Governors memorandum of approval, L 1964, ch 350, NY Legis Ann, 1964, p 512). However, by its own terms, the statute limits the Grand Jury to reporting facts concerning misconduct or nonfeasance in public office "as the basis for a recommendation of removal or disciplinary action" (CPL 190.85, subd 1, par [a]). Concededly, Mr. B has voluntarily resigned and so the report no longer contains a viable recommendation of either removal or disciplinary action and is, therefore, no longer acceptable under the terms of CPL 190.85. Moreover, our review of the testimony, like that of the Supreme Court, indicates that it completely fails to support charges two and three. As to charge one, the recommendation made is constitutionally impermissible in that it seeks to punish a public official for the exercise of his constitutional right not to testify against himself *(Gardner v Broderick,* 392 US 273, *supra)*. For these reasons, Report R-B was properly permanently sealed.

The orders should be affirmed.

MAHONEY, P. J., SWEENEY, KANE, MAIN and MIKOLL, JJ., concur.

Orders affirmed.