■ In the Matter of the REPORT OF THE TENTH SPECIAL APRIL-MAY 1994 GRAND JURY. ROBERT M. MORGENTHAU, Appellant, v VINCENT CUTTITA, Respondent. In the Matter of the REPORT OF THE TENTH SPECIAL APRIL-MAY 1994 GRAND JURY. ROBERT M. MORGENTHAU, Respondent, v VINCENT VELELLA et al., Appellants. [649 NYS2d 420] —Order of the Supreme Court, New York County (Rena Uviller, J.), entered on June 16, 1995, which accepted the Report of the Tenth Special April-May 1994 Grand Jury and directed that it be filed as a public record, and orders of the same court and Justice entered on or about September 5, 1995, which, upon reconsideration, adhered to the prior determination, are unanimously reversed to the extent appealed from, on the law, without costs, and the Report is directed sealed. The order, same court and Justice, entered on June 16, 1995, which accepted the Report of the Tenth Special April-May 1994 Grand Jury and directed that it be filed as a public record, is unanimously reversed, on the law, without costs, and the Report is directed sealed. The order, same court and Justice, entered on August 10, 1995, which granted Cuttita's motion to redact all references to him in the Report, is unanimously affirmed, without costs.

On May 3, 1994, the Tenth Special April-May Grand Jury of New York County was empanelled by Justice Rena K. Uviller. The Grand Jury investigated the Board of Education for the City of New York (the "Board") hearings concerning candidate

eligibility for the elections in question and during a period of ten months, heard testimony from over 200 witnesses and was presented with extensive documentary evidence. No criminal charges were returned.

On March 28, 1995, the Grand Jury, pursuant to CPL 190.85, filed a 43-page "Report * * * Concerning Hearings Held by the Board of Elections in the City of New York Relating to the 1993 New York City Community School Board Elections" (the "Report"). The Report recommended removal or disciplinary action be taken as to certain individuals, for acts of misconduct, nonfeasance and neglect in public office for allegedly failing to adhere to the mandates of the Election Law.

By order dated June 16, 1995, Justice Uviller accepted the Report and directed that it be filed as a public record. Respondents DeFrancesco, King, Tosi and Velella appealed from that order. In addition, Velella and Tosi filed a joint response to the charges set forth in the Report on August 2, 1995. By order dated September 11, 1995, Justice Uviller adhered to her original order directing the public filing. Velella and Tosi thereafter filed additional appeals from that order. This Court subsequently granted the People's motion, on consent of all parties, to consolidate the appeals. Upon consideration of these appeals, we now reverse with respect to Velella, Tosi, DeFrancesco and King and direct that the Report be sealed.

The law is clear that the failure to instruct a Grand Jury on the burden of proof will result in the sealing of the Grand Jury Report, even if that Report is supported by a preponderance of the evidence (*Matter of Hynes v Shea*, 152 AD2d 485, 488; *see also, Matter of Reports of Grand Jury of County of Montgomery*, 100 AD2d 692; *Matter of June 1982 Grand Jury of Supreme Ct. of Rensselaer County*, 98 AD2d 284). The reasoning is that the "absence of this essential instruction left the Grand Jury without 'a statement of the law * * * adequate to guide it on the issues under consideration' " (*Matter of June 1982 Grand Jury of Supreme Ct. of Rensselaer County, supra*, at 285, quoting *Matter of Report of Special Grand Jury of County of Monroe*, 77 AD2d 199, 202).

In the matter at bar, the Grand Jury was instructed at the outset about the possible options available to them, ranging from "the most common form of the four affirmative actions that may be taken by a Grand Jury", an indictment, to the "quite rare" issuance of a report. They were further told that instructions would be forthcoming in the event that they were asked to issue a report, that only the Judge and the prosecutor

were their legal advisors, and that any legal instructions must be on the record. In addition, they were instructed that a defendant is an interested witness as a matter of law and they "may, of course, consider the defendant's obvious interest in the outcome of the proceeding."

However, while the Grand Jury was repeatedly instructed on the definition of "preponderance of the evidence", at no time were they told that it was the People, and not the appellants, who bore the sole burden of proving the case by that standard. Indeed, in explaining to a grand juror why a separate finding had to be made with respect to each individual that might be named in the Report, the prosecutor noted that "the burden of proof is different, in a report and in an indictment", but once again, failed to assign that burden to the People.

During these hearings, a prolific amount of evidence was presented by both sides to the Grand Jury including the testimony of over 200 witnesses, as well as voluminous documents and records. Without the benefit of any instructions on the People's burden of proof, it is inconceivable that the Grand Jury could have properly evaluated the evidence.

All of the appellants herein testified before the Grand Jury and, as per the People's instructions, were viewed by the Grand Jury as interested witnesses as a matter of law. Under the circumstances, any number of the jurors may have reasonably assumed that appellants bore some burden in disproving the People's case and that their testimony was insufficient to do so. Instructions on the People's burden were particularly necessary in view of the Grand Jury's obvious dissatisfaction with the appellants' purported lack of recollection. As set forth by the Court in *Matter of Reports of Grand Jury of County of Montgomery* (*supra,* at 692), "[t]he Grand Jury should have been instructed that the burden of guilt never shifts from the People and that even if, after analyzing the evidence given on behalf of defendant, the jury came to the conclusion that it was false, no inference of guilt could be drawn from the jury's disbelief" (*see also, People v Tucker,* 101 Misc 2d 660, 663; *Matter of Report of Special Grand Jury of County of Monroe, supra,* at 202).

It is also incumbent upon the prosecutor to instruct the Grand Jury regarding the duties and responsibilities of the public servant who is the target of the probe. In the absence of such instruction on "the substantive aspects of the official's duties, it [is] not only impossible for the Grand Jury to determine that the public servant [is] guilty of misconduct,

nonfeasance or neglect, but * * * it allow[s] the Grand Jury to simply substitute its judgment for that of the public servant" (*Matter of June 1982 Grand Jury of Supreme Ct. of Rensselaer County, supra,* at 285; *see also, Matter of Report [Designated A] of Jan. III Special Grand Jury,* 81 AD2d 639; *Matter of Report of May, 1982 Grand Jury of Columbia County,* 94 AD2d 871). Further, it is improper to instruct the Grand Jury with expert testimony (*Matter of October 1989 Grand Jury of Supreme Ct. of Ulster County,* 168 AD2d 737, 738).

In the matter at hand, with respect to King and Tosi, after a review of the record and the Report, it cannot be said that the prosecutor provided legal instructions to the Grand Jury regarding their duties. Only the various appellants described their own duties in their testimony, which is plainly insufficient as an instruction.

As a result of all of the foregoing, we conclude that the Supreme Court should be reversed and the Reports sealed as to Velella, Tosi, DeFrancesco and King.

With regard to Cuttita, the Supreme Court approved the Report on June 16, 1995, Cuttita was served with the Report and filing order on June 20, 1995 and thereafter resigned from the Board on June 30, 1995. By motion dated July 26, 1995, Cuttita moved for the deletion of all references to him in the Report on the grounds that he was no longer a public servant. By order entered August 10, 1995, Justice Uviller granted the motion and the People appeal. We now affirm.

It is well settled that the name of a public servant contained in a Grand Jury Report who has resigned from his position must be deleted from that Report (*see, Matter of Report of 1985-1986 Special Grand Jury, Nassau County,* 150 AD2d 580, 581; *Matter of Report of Apr. 1979 Grand Jury of Montgomery County,* 80 AD2d 654, 655; *Matter of Onondaga County District Attorney's Off.,* 92 AD2d 32; *Matter of Reports of Saratoga County Grand Jury for Mar. 1979 Term,* 77 AD2d 399). Since the Report herein seeks the dismissal or discipline of a public servant who has resigned, "the report no longer contains a viable recommendation of either removal or disciplinary action and is, therefore, no longer acceptable" (*Matter of Reports of Saratoga County Grand Jury for Mar. 1979 Term, supra,* at 404).

Furthermore, CPL 190.85 (1) (a) provides for the issuance of a Grand Jury Report "[c]oncerning misconduct, non-feasance or neglect in public office by a public servant *as the basis for a recommendation of removal or disciplinary action*" (emphasis added). Upon the expiration of the time within which a public

servant either files an answer and/or appeal, the prosecutor is required to deliver the report and any appendix "for appropriate action, to each public servant or body having removal or disciplinary authority over each public servant named therein" (CPL 190.85 [3]). Thus, by its very terms, the statute contemplates taking action against a public servant. Since Cuttita was no longer a public servant, his name was properly deleted from the Report. Concur—Rosenberger, J. P. Wallach, Kupferman and Tom, JJ.